### 71632. THE STATE v. BROWN.
(342 SE2d 779)

DEEN, Presiding Judge.

A. J. Hahn, an experienced DeKalb County police officer, had stopped his patrol car behind other traffic at a red light on a DeKalb County thoroughfare, when he noticed that the driver of the car parallel with his in the adjacent lane was making motions indicating that he wished to speak with the officer. Hahn rolled down his window, and the other driver told him that the station wagon immediately in front of his (the motorist's) own car had been moving in an erratic manner, and some distance back, had actually struck another vehicle. When the light changed, Hahn, with the other motorist's cooperation, pulled in behind the station wagon and turned on his blue lights. The driver of the station wagon, which was now directly in front of Hahn, gave no indication that he saw the patrol car but turned right into a shopping center. Hahn followed, expecting that the other vehicle would stop. When it did not, Hahn "bumped" (i.e., gave a short blast upon) his siren, but the station wagon continued through the parking lot and headed towards the street; Hahn testified that he could see the driver's eyes in the latter's rear-view mirror and could tell that he was watching the patrol car. Hahn then turned on his siren full blast,

and the station wagon stopped. During the short distance that Hahn followed the other car, there was no weaving or other erratic driving.

Hahn testified that the station wagon's driver, appellee Brown, emitted an odor of alcohol and that his eyes were bloodshot and his speech slurred. Hahn advised him of his rights under the Georgia Implied Consent law, OCGA § 40-5-55, reading from a card he carried for that purpose. Brown's car was towed and Brown himself taken to police headquarters, where a technician required that he again be advised of his rights, asked him if he understood what had been read to him, and inquired as to whether he desired an additional, independent test, pursuant to OCGA § 40-6-392 (a) (3). According to the technician's testimony, appellee replied that he understood and that he desired no independent test. The result of the intoximeter test showed that appellee had a blood alcohol content above that which gives rise to a presumption of being under the influence of an intoxicating substance, OCGA § 40-6-392 (b).

Prior to trial appellee filed a motion to suppress the results of the intoximeter test on the ground that the arresting officer lacked probable cause for stopping him. The trial court held that no probable cause existed and dismissed the case. The state appeals, enumerating as error the court's holding that there was no probable cause for the investigatory stop, and the dismissal of the case for lack of probable cause. *Held*:

1. *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968), held that a reasonable and articulable suspicion that a person is involved in criminal activity justifies a brief investigatory stop; and that such a stop, if brief and minimally intrusive, need not meet the higher "probable cause" standard required for a lawful arrest. *Terry v. Ohio*, supra at 30. "The validity of an officer's investigative or protective conduct upon making a 'Terry stop' is determined in each case by balancing the extent of the intrusion against the immediacy and importance of the interest in crime prevention or law enforcement which is sought to be advanced." *State v. Golden*, 171 Ga. App. 27 (318 SE2d 693) (1984). In the instant case the state's interest was in protecting the motoring and pedestrian public — an interest whose importance can hardly be overstated; and where a moving vehicle is involved, the interest could scarcely be other than immediate. On the other hand, the intrusion upon Brown's privacy would have been minimal as to both time and extent had he not manifested indicia of intoxication, a misdemeanor offense when the subject is operating a vehicle. See OCGA § 40-5-55 (a). In this fact situation the balance would clearly favor the public, or the state — both represented by the police officer.

As to the *Terry* requirement of a reasonable and articulable suspicion, the impromptu report of a motorist who had been driving be-

hind a suspect, even if that motorist's identity were unknown to the police officer, was certainly sufficient to authorize the officer to make an investigatory stop. Compare *United States v. Brignoni-Ponce*, 422 U. S. 873 (95 SC 2574, 45 LE2d 607) (1975); *Adams v. Williams*, 407 U. S. 143 (92 SC 1921, 32 LE2d 612) (1972); *Radowick v. State*, 145 Ga. App. 231, 233 (244 SE2d 346) (1978). To hold otherwise would not only defy common sense but might well have the effect of discouraging private citizens who observe suspect conduct from reporting such conduct to law enforcement officials. If this were to happen, a valuable link in the chain of citizen-government cooperation would be lost, and the attainment of the goal of a stable, safe, law-abiding society retarded. Moreover, the effect upon law enforcement personnel could hardly be otherwise than detrimental. The trial court erred in finding that there was no justification for the initial stop of appellee.

2. The determination having been made in Division 1, supra, that the trial court erred in granting appellee's motion to suppress, it follows that, for this reason if for no other, the dismissal of the case was also error.

*Judgment reversed. Benham and Beasley, JJ., concur.*

DECIDED MARCH 18, 1986.

*Ralph T. Bowden, Jr., Solicitor, Nancy H. Jackson, Susan L. Warshauer, Assistant Solicitors*, for appellant.
*W. Michael Maloof*, for appellee.