A94A0530. STREICHER et al. v. THE STATE.
A94A0531. PIPPIN v. THE STATE.
(445 SE2d 815)

McMurray, Presiding Judge.

Defendant Streicher was charged, via accusation, with operating a motor vehicle with no insurance, no proof of insurance, driving with a suspended license, possession of less than one ounce of marijuana, and permitting the unlawful operation of a vehicle. Defendant Pippin was charged, via accusation, with driving with a suspended license, no proof of insurance, and possession of less than one ounce of marijuana. Defendants filed separate motions to suppress, arguing that they were subjects of an unlawful motor vehicle stop by a law enforcement officer. The State then amended the accusation against defendant Streicher charging him with improper parking or stopping in violation of OCGA § 40-6-200, leaving a motor vehicle unattended in violation of OCGA § 40-6-201, improper stopping on a roadway in violation of OCGA § 40-6-202, and standing or parking in a prohibited place in violation of OCGA § 40-6-203 (a) (2) (D).

At the hearing on defendants' motions to suppress, Officer Bruce M. Yenerall of the Gwinnett County Police Department testified that, at approximately 8:30 a.m. on September 23, 1992, "[a]s he pulled up to [a] stop sign[, he] observed a pick-up truck that was directly in front of [him] come to a stop[; that he then watched the] person that was driving[, defendant Streicher, slide] to the right side of the vehicle [and that he observed the] person that was in the passenger seat[, defendant Pippin, get] out of the vehicle and [walk] toward the back [of the truck]." Officer Yenerall testified that "when [defendant Pippin] saw me, [he] sort of had a surprised look on his face [and that he] walked on around the vehicle[,] got into the vehicle [and turned] right onto 29 Highway. . . ." Officer Yenerall testified that he then "initiated the traffic stop on them." Officer Yenerall explained "that when [defendant Pippin] got out of the vehicle, shut the door [and] turned around, that's when he [thought defendant Pippin] first saw [the officer and that he didn't] think either [defendant Pippin or defendant Streicher] had [seen] it was an *unmarked* police car behind 'em at that point [because defendant Pippin] had a very startled look on his face [when he looked up and saw the officer]." (Emphasis supplied.)

Officer Yenerall then gave confusing (and apparently conflicting) reasons for stopping defendants. However, the trial court clarified via the following examination: "THE COURT: When did you make the decision to issue the traffic stop? [OFFICER YENERALL]: As soon as the passenger stepped out of the vehicle, walked to the vehicle and put the vehicle in motion. When I saw them, Your Honor, change drivers, and the other driver got into the vehicle and took off. I knew

then, that I was going to stop to find out why they stopped there in the middle of the road while they changed drivers. And it was my determination at that point, to not make the traffic stop in the middle of the intersection for my personal safety, for their personal safety, and not to create a road hazard. I made the traffic stop absolutely — as immediately — immediately upon clearing the intersection. THE COURT: The mere fact that they were changing drivers, you said you immediately made the decision that you were going [to] stop what? THE WITNESS: I wanted to find out why they picked that particular spot to change drivers. THE COURT: Did you suspect there was any criminal activity at that time? THE WITNESS: No, not at [that] point. In fact[,] my assumption was at that time, that the reason they changed drivers was, that they saw me, a law enforcement officer in a *marked* [sic] police car, right behind them. THE COURT: Was that suspicious to you? THE WITNESS: Yes, it was. THE COURT: Why was it suspicious? THE WITNESS: Because I've had certain things like that happen in my career and every time that it's happened, and I've stopped the people for it, they haven't had a driver's license, they've been intoxicated, they've been wanted, any numerous amount of things." (Emphasis supplied.)

The trial court denied defendants' motions to suppress, reasoning as follows: "THE COURT: I think the issue in these cases is, whether or not the stop was pretextual. And the case law that I'm familiar with says that . . . we must look at the totality of the circumstances to see whether or not a reasonable officer . . . , in these same circumstances could make a particular — particularized or objective basis for making a brief investigatory stop. And I invited argument and I said it was [a] thorny issue because I do believe it's a thorny issue.

"In the case at hand folks got out of the car and walked around the car and changed drivers in the roadway. Now whether or not they were at a stop sign, going down the middle of the roadway, they were in the roadway, and that in and of itself, does not exhibit criminal behavior always, maybe, but it is unusual behavior. It is behavior which would — which might tend to draw this officer's attention. Therefore, based on the officer's testimony, of his training as a police officer, that this drew his attention.

"It is a particularized, objective statement of what is happening that aroused his suspicions in the case. It differs from the cases where, when you cite in the brief where someone is going down the road and turns off on a dirt road and just keeps on going. There's nothing strange to anybody about that. Where a car is sitting on the side of the road, a lot of cars just sit on the side of the road. But you don't see a lot of cars stop in the roadway and drivers change places. Therefore, based on that, I'm going to deny the motion to suppress."

Separate orders denying the motions to suppress were entered

and certified for immediate review. Defendants' duplicate joint applications for interlocutory appeal were granted. Defendant Streicher appealed in Case No. A94A0530 and defendant Pippin appealed in Case No. A94A0531. *Held*:

In identical enumerations, defendants contend the trial court erred in denying their motions to suppress, arguing that Officer Yenerall's stop of the vehicle was invalid because the officer lacked probable cause and because he had no reasonable suspicion that a crime was occurring.

" ' "We have repeatedly held that an authorized officer may stop an automobile and conduct a limited investigative inquiry of its occupants, without probable cause, if he has 'reasonable grounds' for such action — 'a founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing.' (Cit.)" (Cit.)' *Brooks v. State*, 129 Ga. App. 109, 111 (198 SE2d 892) (1973)." *Coley v. State*, 177 Ga. App. 669 (1), 670 (341 SE2d 9). " ' "Although an officer may conduct a brief investigative stop of a vehicle, (cit.), such a stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct, *Terry v. Ohio*, 392 U. S. 1, 27 (88 SC 1868, 1883, 20 LE2d 889, 909) (1968); (Cit.). Investigative stops of vehicles are analogous to *Terry*-stops, *Terry*, supra, and are invalid if based upon only 'unparticularized suspicion or "hunch," ' 392 U. S. at 27 (88 SC at 1883, 20 LE2d at 909)." (Cit.) "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. (Cits.)" (Cit.)' *Evans v. State*, 183 Ga. App. 436, 438 (2) (359 SE2d 174) (1987). '(T)his suspicion need not meet the standard of probable cause, (but) must be more than mere caprice or a hunch or an inclination. (Cit.)' *State v. Smith*, 137 Ga. App. 101, 102 (223 SE2d 30) (1975)." *Jorgensen v. State*, 207 Ga. App. 545, 546 (428 SE2d 440).

In the case sub judice, Officer Yenerall saw a vehicle stop at a stop sign. He observed no moving violation but saw the driver switch places with the passenger. The suspect vehicle then moved off without committing any *known* violation.

Officer Yenerall simply explained that he stopped defendants' vehicle "to find out why they stopped there in the middle of the road while they changed drivers." We view this reason alone to be insufficient alone to give rise to a reasonable suspicion of criminal conduct so as to authorize a forcible stop of a vehicle.

" '(E)xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license

and the registration of the automobile are unreasonable under the Fourth Amendment.' . . . *Delaware v. Prouse,* [440] U. S. [648] (99 SC 1391, 59 LE2d 660) (1979)." *Bobo v. State,* 153 Ga. App. 679 (266 SE2d 247). " '[P]ersons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers.' *Delaware v. Prouse,* [supra]." *Bobo v. State,* 153 Ga. App. 679, supra. In the case sub judice, Officer Yenerall's suspicions based upon the change of drivers and his informed law enforcement experience was not sufficient to authorize a forcible stop of defendants' vehicle. See *Johnson v. State,* 197 Ga. App. 538, 539 (398 SE2d 826). Consequently, in the absence of additional outward indicia of criminal activity, we conclude that Officer Yenerall's stop of defendants' vehicle was based on "nothing more than 'inarticulate hunches' and thus insufficient to justify a seizure under the Fourth Amendment." *Tarwid v. State,* 184 Ga. App. 853 (1), 856 (363 SE2d 63). Nonetheless, the State argues that the officer's stop of defendant's vehicle was justified because the change of drivers at the stop sign amounted to a series of parking violations committed in Officer Yenerall's presence. We do not agree. Officer Yenerall did not stop defendants because of these alleged violations; he stopped them "to find out why they stopped there in the middle of the road while they changed drivers." The State's attorney added the minor traffic charges against defendant Streicher (which were not the basis of the traffic stop) after defendants filed motions to suppress.

The trial court erred in denying defendants' motion to suppress. See *Vansant v. State,* 264 Ga. 319 (443 SE2d 474) (1994).

*Judgments reversed. Pope, C. J., and Smith, J., concur.*

DECIDED JUNE 27, 1994.

*C. Alan Mullinax,* for appellants.
*Gerald N. Blaney, Jr., Solicitor, Gary S. Vey, Richard E. Thomas, Assistant Solicitors,* for appellee.