A97A1015. DAWSON v. THE STATE.
(488 SE2d 114)

POPE, Presiding Judge.

Defendant John Fitzgerald Dawson was arrested and charged with DUI, possession of less than an ounce of marijuana, and driving with a suspended license. The trial court denied his motion to sup-

---

press physical evidence of and exclude testimony regarding (1) the marijuana found in his car, and (2) his refusal to submit to a urine test. As defendant consented to the search of his car in the course of a lawful stop, we affirm the denial of the motion with respect to the marijuana. Because the arresting officer's lack of a card with the implied consent warning on it did not justify a delay in advising defendant of his implied consent rights under the circumstances of this case, however, we reverse the trial court's denial of the motion with respect to defendant's refusal to submit to a urine test.

Dwayne Sapp, an officer with the Lee County Sheriff's Department, was told by a confidential informant that three men who had been drinking and smoking marijuana had gotten into a brown Buick with a certain tag number and were leaving the Palmyra Mobile Home Park. Officer Sapp considered the informant reliable: he had known the informant for at least three years at that time, and had made at least three arrests based on information provided by the informant. Officer Sapp was with Officer Miles O'Quinn when he received the information. They were in a vehicle near the mobile home park, and were able to arrive there in time to see the brown Buick with the specified tag number leaving the park. The officers followed the Buick, and when it stopped in the middle of the roadway and then began to pull off again, they turned on their lights and pulled the Buick over.

Defendant was the driver, but he had no driver's license. His eyes were bloodshot and his speech was slurred; he was unsteady on his feet and disoriented, and smelled strongly of alcohol. Defendant consented to a search of his car, and the officers found a small amount of marijuana under the front passenger's seat. Officer O'Quinn arrested defendant at the scene, but did not read him his implied consent rights until approximately 45 minutes later, after a third officer called to the scene had driven defendant to the jail. O'Quinn testified that he did not inform defendant of his implied consent rights at the time of the arrest because he did not have a warning card with him.

1. Citing *Streicher v. State*, 213 Ga. App. 670 (445 SE2d 815) (1994), defendant argues that his initial detention was unlawful because his stopping in the roadway did not give the officers the articulable suspicion necessary to briefly detain him. We did hold in *Streicher* that stopping in the roadway was not sufficient to support an articulable suspicion of criminal behavior. *Streicher* presented a different situation, however, because the stop in that case occurred at a stop sign and the driver and passenger were changing places. Moreover, unlike the officer's suspicions in *Streicher*, the officers' suspicions in this case were based not only on defendant's stopping in the roadway, but also on information from a proven, reliable infor-

mant that the driver and passengers in the car had been drinking and smoking marijuana, and were very intoxicated. Combined with the stop for no apparent reason, this information was sufficient to give rise to an articulable suspicion of criminal behavior, so the initial stop was lawful and the subsequent consent was valid. See *Rider v. State*, 222 Ga. App. 602 (475 SE2d 655) (1996).

2. Defendant also contends that testimony regarding his refusal to take a urine test should have been excluded, and we agree. The arresting officer must advise a defendant of his rights under the implied consent laws "at the time of arrest." OCGA § 40-6-392 (a) (4). The State suggests that since Officer O'Quinn advised defendant of his rights before he asked him to take the test, and because defendant cannot show that he was harmed by the delay, the officer substantially complied with the law and the warning should be deemed sufficient. But substantial compliance is not sufficient in this context; the officer *must* give the warning *when he arrests the defendant* unless there is a good reason not to. *Perano v. State*, 250 Ga. 704, 708 (300 SE2d 668) (1983); *State v. O'Donnell*, 225 Ga. App. 502 (484 SE2d 313) (1997). And contrary to the State's contention, the officer's failure to carry a warning card is not a good reason for a delay.

In support of its position that not having the warning card is a circumstance justifying delay, the State cites *Martin v. State*, 211 Ga. App. 561 (440 SE2d 24) (1993). In that case, the officer did not advise the defendant of his rights at the time of the arrest because she did not have the correct card with her, and we held the delay in advising him of his rights was justified. But there were other factors present in *Martin* which are not present in this case. In *Martin*, the arresting officer recognized the problem and immediately rushed the defendant to the jail, where he was advised of his rights within ten minutes of his arrest. Here, there was a delay of more than 45 minutes. And during this time, the arresting officer and his partner called another officer to the scene, but apparently did not even ask him to bring a card. Moreover, in *Martin* the officer needed a new card because the law regarding what the officer should say had changed; thus, the officer's failure to have the card with her was somewhat understandable. In this case, on the other hand, no explanation is given for the arresting officer's failure to have the card with him, and it seems reasonable to assume that not carrying the card is his standard practice. Allowing a delay under these circumstances would allow officers to avoid the mandate of the law by failing to carry warning cards as a matter of standard practice; and we have already held that this would be an unacceptable result. Cf. *Vandiver v. State*, 207 Ga. App. 836 (1) (429 SE2d 318) (1993) (standard practice of waiting to give the warning until the defendant was at the jail did not justify delay). Accordingly, the trial court should have granted defendant's motion

to exclude testimony of his refusal to take a urine test.

*Judgment affirmed in part and reversed in part. Johnson and Blackburn, JJ., concur.*

DECIDED JUNE 24, 1997.

*T. Lee Bishop, Jr.,* for appellant.

*John R. Parks, District Attorney, Richard E. Nettum, Assistant District Attorney,* for appellee.