A97A0890. HINSON v. THE STATE.
(494 SE2d 693)

McMURRAY, Presiding Judge.

Defendant Fitzgerald Hinson a/k/a Columbus Hinson was tried before a jury and found guilty of trafficking in cocaine, violating the Georgia Controlled Substances Act (possession of cocaine with intent to distribute), and possession of a firearm during the commission of a crime. Defendant's motion for new trial was denied, and this appeal followed. In 12 enumerations of error, he complains of the sufficiency of the evidence, the denial of his motion to suppress, the introduction of similar crimes evidence and the failure to give a contemporaneous limiting instruction, the denial of his motion for mistrial, the intro-duction of defendant's incriminating statement, the failure to charge on a lesser included offense, and the effectiveness of trial counsel. *Held*:

1. (a) The denial of defendant's motion to suppress will be consid-ered first. "When an appellate court reviews a trial court's order con-cerning a motion to suppress evidence, the appellate court [is] guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial [court] hears the evidence, and [its] findings based upon conflicting evidence are analogous to the verdict of a jury and should not be dis-turbed by a reviewing court if there is any evidence to support [those findings]. Second, the trial court's decision with regard to questions

of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment." (Citations, punctuation and emphasis omitted.) *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646).

At the hearing on defendant's suppression motion, uniform Officer D. K. Byers of the DeKalb County Police Department testified that on February 6, 1994, he was dispatched to Robin Hill Court at 2:00 a.m., to investigate a possible kidnapping, in response to William Hugh Bell's complaint to police that "his wife, Kelly Bell, was being . . . held against her will . . . [by a man] known to carry a weapon. . . ." Mr. Bell identified that man by name as defendant, Columbus Hinson. "Mr. Bell said . . ., that's him, indicating [a] car that had just pulled up." Officer Byers observed as "Ms. Bell was brought home by [defendant] in a car [that defendant] parked at the adjacent house from where Ms. Bell lives." Officer Byers "stopped the vehicle and stopped [defendant]. [Officer Byers] checked the vehicle for [his (Officer Byers')] safety for weapons," including those areas where, in his experience, weapons have been concealed, "which would be under the passenger seat, under the driver's seat, between the seats, the glove box, et cetera." Officer Byers had not yet had a "chance to talk to [Ms. Bell] until after he stopped [defendant]." "Under the front passenger seat, [Officer Byers] located a paper bag that contained . . . 88 rocks, [that] is, little chunks of crack cocaine, each in their own separate plastic bags, [and also] located [18.7 grams of] powder cocaine, . . . and [further] located [30.3 grams of] suspected marijuana." "In the glove box [Officer Byers] located a [Glock]. It was a Model 21. It was a semiautomatic pistol, .45 caliber."

Defendant contends the trial court erred in denying his motion to suppress, arguing he was subjected to a warrantless arrest without probable cause when Officer Byers ordered him out of his car at gunpoint and placed him in the back of the patrol car.

(b) "A policeman making a reasonable investigatory stop may conduct a limited protective search for concealed weapons when he has reason to believe that the suspect is armed and dangerous, and if, during the search contraband is turned up, it may be used as evidence in a prosecution for its possession. Adams v. Williams, 407 U. S. 143 (92 SC 1921, 32 LE2d 612)." (Emphasis omitted.) *Bethea v. State*, 127 Ga. App. 97, 98 (192 SE2d 554). The question for decision in the case sub judice is whether Officer Byers had a reasonable suspicion that defendant was engaged in criminal activity to warrant a forcible stop of defendant's car and a search of defendant's person and vehicle for weapons. Based upon the information supplied to Officer Byers by William Hugh Bell, we conclude the forcible stop and protective search were justified under the circumstances.

(c) "To justify a brief *'Terry'* stop [under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889)], an officer must have an articulable, reasonable suspicion that the law is being violated. The reasons justifying an investigatory stop need not rise to the level of probable cause, but must be more than a mere hunch and must not be arbitrary or harassing." (Footnotes omitted.) *Sams v. State*, 265 Ga. 534, 535 (1) (459 SE2d 551).

In the case sub judice, a reasonable, articulable suspicion that defendant was engaged in an armed kidnapping was supplied by William Hugh Bell. "[W]here the hearsay . . . is [supplied by] an identified interested citizen[,] . . . the credibility is not as suspect and the analysis is not as stringent [as where information is supplied by an anonymous tipster]." *Tuzman v. State*, 145 Ga. App. 761, 764 (2) (A), 766 (244 SE2d 882). "[A] law-abiding citizen has a 'built in' credibility. [Cit.]" *Miller v. State*, 155 Ga. App. 399 (I) (A), 400 (270 SE2d 822). See also *Devier v. State*, 247 Ga. 635, 637-638 (5) (277 SE2d 729) (A hearsay declarant is deemed reliable upon a showing that "he or she is a police officer, the victim of the crime, a law-abiding and trustworthy citizen, or even a declarant against penal interest. [Cits.]"). "The Supreme Court [of the United States] has 'recognized that investigative detentions involving suspects in vehicles are especially fraught with danger to police officers.' *Michigan v. Long*, 463 U. S. 1032, 1047 (III) (103 SC 3469, 77 LE2d 1201) (1983)." *Hayes v. State*, 202 Ga. App. 204, 205 (414 SE2d 321). Consequently, Officer Byers' decision to detain defendant pending an accurate assessment of the situation was not unreasonable under the circumstances. Id. It follows that the protective search of defendant and his vehicle for weapons was authorized and that the trial court correctly refused to suppress the contraband discovered on defendant's person and in his vehicle during the protective search for weapons.

2. Under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560), the evidence adduced at trial was sufficient to authorize the jury's verdicts that defendant is guilty, beyond a reasonable doubt, of trafficking in cocaine, violating the Georgia Controlled Substances Act (possession of cocaine with intent to distribute), and possessing a firearm during the commission of a crime as alleged in the indictment.

3. Defendant's fifth enumeration has merit. Under the controlling authority of the recent whole court decision in *Belt v. State*, 227 Ga. App. 425 (1) (489 SE2d 157), the trial court committed reversible error in failing to give, sua sponte, a limiting instruction contemporaneous with the admission of extrinsic acts or similar crimes evidence. Consequently, we reverse the judgment of conviction for all three counts and remand for a new trial.

4. The defendant's remaining enumerations have been consid-

ered and are found to be without merit or to present circumstances unlikely to recur upon any retrial.

*Judgment reversed. Andrews, C. J., Birdsong, P. J., Smith and Eldridge, JJ., concur and also concur specially. Beasley and Ruffin, JJ., concur in Divisions 2, 3, 4, and in the judgment.*

ELDRIDGE, Judge, concurring specially.

I concur fully with the majority. It is acceptable under the Fourth Amendment for the police to stop persons and detain them briefly in order to investigate a "reasonable suspicion" that the persons have engaged or are about to engage in criminal activity. *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). "Reasonable suspicion" is determined from the totality of the circumstances based upon some minimal objective justification for the stop. *United States v. Sokolow*, 490 U. S. 1 (109 SC 1581, 104 LE2d 1) (1989). The *Terry* rationale applies to allow the police to conduct an investigatory stop of a car. *United States v. Sharpe*, 470 U. S. 675, 682 (105 SC 1568, 84 LE2d 605) (1985). Thereafter, under *Michigan v. Long*, 463 U. S. 1032 (103 SC 3469, 77 LE2d 1201) (1983), "the balancing required by *Terry* clearly weighs in favor of allowing the police to conduct an area search of the passenger compartment to uncover weapons, as long as they possess an articulable and objectively reasonable belief that the suspect is *potentially* dangerous." (Emphasis supplied.) Id. at 1051.

The information provided to Officer Byers from the victim's husband that his wife had been kidnapped by the appellant; that appellant was known to carry a gun; that the victim had been gone for almost 12 hours; and that the husband had received a recent telephone call from the victim wherein she related that appellant had threatened to harm her, provided sufficient articulable, objective criteria to justify both the stop of appellant's car in order to find out what was going on and an area search of the passenger compartment of the car for the officer's safety prior to questioning.

It is irrelevant that the officer did not follow the alleged kidnap victim into the house and obtain *more* information before detaining appellant, when the information that he *had* was sufficient to warrant the stop. Since the evidence showed that appellant was driving away, the detention was necessary immediately in order to ascertain the situation.

It is also irrelevant that appellant was secured in the back of the police vehicle when the passenger compartment was being searched. Although *Michigan v. Long* speaks to an officer's belief that a suspect "may gain immediate control of weapons," id. at 1049, the use of the term "immediate control" must not be taken out of the context of the opinion. The Supreme Court specifically held in *Michigan v. Long*, "The Michigan Supreme Court appeared to believe that it was not

reasonable for the officers to fear that Long could injure them, because he was effectively under their control during the investigative stop and could not get access to any weapons that might have been located in the automobile. This reasoning is mistaken[.] . . . During any investigative detention, the suspect is 'in the control' of the officers in the sense that he may be briefly detained against his will[,] . . . [but] if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will *then* have access to any weapons inside." (Citations and punctuation omitted; emphasis supplied.) Id. at 1051-1052. Clearly, the term "immediate control" encompasses a situation wherein a suspect is released after detention and has the potential immediately thereafter to obtain control of a weapon by returning to the vehicle. "[A] *Terry* investigation, such as the one that occurred here, involves a police investigation 'at close range,' when the officer remains particularly vulnerable in part because a full custodial arrest has not been effected, and the officer must make a 'quick decision as to how to protect himself and others from *possible* danger. In such circumstances, we have not required that officers adopt alternate means to ensure their safety in order to avoid the intrusion involved in a *Terry* encounter." (Citations and punctuation omitted; emphasis omitted and supplied.) Id. at 1052.

I am authorized to state that Chief Judge Andrews, Presiding Judge Birdsong, and Judge Smith join in this special concurrence.

BEASLEY, Judge, concurring in the reversal of the judgment.

I concur fully in Divisions 2, 3, and 4 of the majority opinion but not with the application of controlling principles in Division 1. The reversal of the judgment is also required because of the trial court's ruling on the motion to suppress, which Hinson justifiably enumerates as error.

"Although we construe the evidence most favorably to upholding the trial court's findings and judgment, this court's responsibility in reviewing the trial court's decision on a motion to suppress is to ensure that there was a substantial basis for the decision." (Citations and punctuation omitted.) *Raulerson v. State*, 223 Ga. App. 556, 557 (2) (479 SE2d 386) (1996).

In addition to the facts outlined in the majority opinion, others are relevant. William Bell, the "concerned citizen," was not known to Officer Byers. The only suggestion that Hinson might have access to a weapon was Bell's saying that the person was "known to carry a weapon." When Mrs. Bell got out of the front passenger side of the car and headed into the house, she did not speak to the officer or her husband, who were standing in the yard. Hinson began to back out of the neighbor's driveway, but the officer activated the blue light on his marked patrol car and positioned the patrol car to prevent Hinson's

leaving. He wanted to investigate "the extent [and] nature . . . of the two being together." He ordered Hinson out of the car at gunpoint and locked him in the back of the patrol car. According to the officer, Hinson was cooperative, not abusive or offensive towards the officer, and had committed no known offense. No one else was in Hinson's car.

At that point, before asking Hinson or Kelly Bell any questions, the officer searched those areas of the passenger compartment of Hinson's car where weapons might be hidden, including the glove compartment and the area under the front seats. The officer testified that he conducted this search for his own safety. Under the passenger seat, the officer found a bag containing cocaine and marijuana, and inside the glove compartment he found a .45 caliber pistol. He then went further and searched the trunk, where he found a shotgun.

The trial court found the officer had "probable cause" to stop and detain Hinson and "probable cause" to search the car because of Bell's reported statement that Hinson was known to carry a weapon. It appears the trial court merely used the wrong terms and in fact agreed with the State's arguments that (1) the officer had "articulable suspicion" to perform a brief investigative stop; and (2) the limited search of the vehicle for weapons was justified by concern for the officer's safety, pursuant to *Michigan v. Long*, 463 U. S. 1032 (103 SC 3469, 77 LE2d 1201) (1983). Assuming a brief investigative stop was warranted, see *Streicher v. State*, 213 Ga. App. 670, 672 (445 SE2d 815) (1994), the subsequent non-warrant search was unreasonable under the circumstances.

In *Michigan v. Long*, supra, 463 U. S. at 1035-1036, officers detained Long for an investigation after he ran his car into a ditch. Long exited the car and met officers at its rear, but he did not immediately respond to questions and appeared to be "under the influence of something." When Long turned and began walking toward the open car door, officers saw a large hunting knife on its floorboard. They stopped Long and conducted an unfruitful "pat-down" search of his person for weapons. One officer then shined a light into the car and, observing something protruding from under the armrest, lifted the armrest and found marijuana.

The court ruled the limited search justified by the officers' concern that Long might have access to a weapon in the car and held "the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." Id. at 1049.

*Bentley v. State,* 214 Ga. App. 580, 582-583 (3) (448 SE2d 479) (1994), held police were justified in searching a passenger compartment after drug suspects stated they had weapons in their car. In *Newby v. State,* 178 Ga. App. 891, 892 (2) (345 SE2d 102) (1986), a protective search for weapons was justified when police stopped suspects who had reportedly committed armed robbery a few minutes earlier and saw the butt of a firearm protruding from under the front seat of the suspects' car. *Holbrook v. State,* 177 Ga. App. 318, 319-321 (1) (339 SE2d 346) (1985), held a protective sweep of a vehicle before it was returned to a detained suspect was justified by facts showing that defendant was on probation, his father had just been stopped in possession of a weapon, his brother was a prison escapee, the three men were known to the FBI as frequent drug traffickers, and the police had information that a bank robbery might be in the offing. Compare *State v. Jarrells,* 207 Ga. App. 192, 193-194 (4) (427 SE2d 568) (1993), a case remanded for the trial court to determine whether, as an incident to detention, a vehicle search for weapons was justified by reasonable articulable belief of the presence of a weapon of which an occupant might gain immediate control. A weapon search is not justified in law merely by the statement of the officer that caution for safety is the reason for the search; objective facts must support the fear of danger created by the possibility that the suspect will gain control of a weapon if the police do not secure it first.

As the Supreme Court stated in *Michigan v. Long,* supra, the police may not conduct such searches every time they conduct an investigative stop. 463 U. S. at 1049, n. 14. A protective sweep of a vehicle's passenger compartment is merely an extension of the investigative stop, the scope of which "is determined in each case by balancing the extent of the intrusion against the immediacy and importance of the interest in crime prevention or law enforcement which is sought to be advanced." (Citation and punctuation omitted.) *State v. Brown,* 178 Ga. App. 307, 308 (1) (342 SE2d 779) (1986). The search, like the investigative stop, must be "reasonably related in scope to the circumstances which justified the interference in the first place." (Citation and punctuation omitted.) *Tarwid v. State,* 184 Ga. App. 853, 855 (363 SE2d 63) (1987). The "weapons search" of Hinson's car at the point conducted was not justified by the circumstances.

First, the only information which could have justified the search of Hinson's vehicle was Bell's reported statement that Hinson was "known to carry a weapon." Nothing in the record shows how Bell obtained this information or whether the officer and Bell even talked about it, and nothing in Bell's reported statement indicated Hinson was carrying a weapon *that night.* See *Oboh v. State,* 217 Ga. App. 553, 555-556 (458 SE2d 177) (1995) (stop not justified by bank tellers'

statements that defendant was "acting very suspicious"). The credibility of Bell's allegations was jeopardized by the event as it unfolded before the officer: Bell's "kidnapped" wife was brought home within an hour of the officer's dispatch to the residence, left the car with no apparent sign that she and Hinson had been fighting or arguing, and simply walked in the front door of her house without approaching her husband or the police officer. The officer knew that Mrs. Bell and Hinson were acquaintances. The record does not show that the officer asked Hinson if he was armed, or conducted a pat-down search of Hinson's person, or saw any weapons in Hinson's car prior to the search, or made any inquiry of Hinson about who he was or why he was with Mrs. Bell. Compare *Michigan v. Long*, supra; *Bentley*, supra.

In addition, at the time of the search Hinson was locked in the patrol car and presented no danger to the officer. As the State notes, an officer may be justified in searching a vehicle for weapons before releasing a suspect he has not arrested. See *Holbrook*, supra. But Officer Byers conducted the search before he ever determined he would release Hinson or had reason to believe Hinson would use a weapon if released back to his car and given the liberty to leave. When asked why he searched the Hinson vehicle before questioning Kelly Bell, the officer explained: "I was going to investigate it and since Mr. Hinson's vehicle was identified as being his vehicle, presumably with him in it, and I had the suspect of the alleged kidnapping there, . . . it wouldn't have been a good idea for me to let him go having a suspect for an alleged kidnapping there when I could have completed the case right there by making that arrest, if, in fact, it was a kidnapping. And also Mrs. Bell [was not going] anywhere else. So I could have questioned her later on as to the facts of the case, which I did in fact do." At the time of the search the officer did not know whether Hinson would be formally arrested or allowed to reenter his car.

An investigative stop must be "limited in time to that minimally necessary to investigate the allegation invoking suspicion, and limited in scope to identification and limited questioning reasonably related to the circumstances that justified the initiation of the momentary stop." (Citation and punctuation omitted.) *Smith v. State*, 216 Ga. App. 453, 454 (2) (454 SE2d 635) (1995). Although the officer had no reasonable grounds to detain Hinson *except* to investigate whether there was a kidnapping, he searched the Hinson vehicle before making any effort to speak to the alleged victim. As recited above, the officer's own testimony shows he conducted this search before making any attempt to investigate whether Hinson had committed a crime against Kelly Bell.

Thus, the search was not justified by "a reasonable belief based

on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[ed]' the officer in believing that [Hinson was] dangerous and . . . [might] gain immediate control of weapons." *Michigan v. Long*, supra, 463 U. S. at 1049. The circumstances in this case, unlike those in *Michigan v. Long*, supra, and the cases cited above, were not shown to be necessary for the officer's safety and thus did not give him "specific and articulable facts" justifying a search of the vehicle for weapons. Id. The trial court was required by law to grant Hinson's motion to suppress.

I am authorized to state that Judge Ruffin joins in this concurrence.

DECIDED NOVEMBER 7, 1997 —
RECONSIDERATIONS DENIED DECEMBER 2, 1997 AND
DECEMBER 16, 1997 —

*Sharon D. Smith-Knox*, for appellant.
Fitzgerald Hinson, *pro se*.
*J. Tom Morgan, District Attorney, Barbara B. Conroy, Benjamin M. First, Assistant District Attorneys*, for appellee.