## A03A0655. HOVIS v. THE STATE.
### (582 SE2d 127)

BLACKBURN, Presiding Judge.

Following his conviction by a jury for hit and run, Michael Hovis appeals, arguing that: (1) he received ineffective assistance of counsel; the trial court erred (2) in charging the jury on hit and run; and (3) in denying his motion for directed verdict. For the reasons set forth below, we affirm.

Viewed in the light most favorable to the verdict, the evidence shows that on the night of September 21, 2000, Hovis and some friends went to Flanigan's Bar in Tucker. While there, Hovis ran into Kevin Joy, an old acquaintance, and Carry Caudel. Joy had recently purchased a new car. Around midnight, he agreed to let Hovis take the car for a test drive.

Shortly after midnight, Darringer Harper was waiting for the light to change near the intersection of Highway 78 and Mountain Industrial Boulevard when he saw a car make a sharp right turn and run off the road. The car hurtled down into a ditch and then shot into the air, flipping and coming to rest over 50 yards from the roadway. Harper immediately drove to a convenience store and asked the clerk to call 911. Returning to the scene of the accident, he found Joy unconscious and strapped into the passenger-side seat. No one was in the driver's seat.

Thomas Davis was at Flanigan's when he received a call on his cell phone from Hovis. Hovis asked him to pick him up at a location near Mountain Industrial Boulevard. Davis left the bar and picked up Hovis, who was bleeding from injuries to his head and arm. When Davis asked what had happened, Hovis said he thought there might have been an accident; when asked where Joy was, he said he was "in

the car." At Hovis's request, Davis drove him to the home of Jamie Wilson, a friend with whom Hovis had been staying.

Hovis awakened Wilson when he entered his house. He told Wilson he had been in an automobile accident and that he had been driving. He also said that there had been a passenger in the car and that the passenger might be dead.

Bridget Eaton, who was also at Flanigan's that night, received several calls from Hovis inviting her to Wilson's house, but she declined the invitations. Finally, after making many calls, Hovis told her he was hurt and asked her to drive him to the hospital. Eaton agreed to do so. When Davis, who had returned to the bar, found out she was going to pick up Hovis, he joined her.

Eaton and Davis picked up Hovis at Wilson's house. On the way to the hospital, they passed the scene of the accident and Joy's wrecked automobile. Eaton heard Hovis say that he could not believe he had "walked away from that." At this point, Eaton became nervous and took Hovis and Davis back to Flanigan's.

Before driving Hovis to the hospital, Davis took Hovis to the home of a friend who was a nurse. The nurse cleaned Hovis's cuts and told him to go to the emergency room. Hovis and Davis then continued on to the hospital.

Eaton, after dropping Hovis and Davis at Flanigan's, went to Wilson's. She began crying and told Wilson that she thought she should call the police about Hovis and the accident. Several minutes later, the police arrived looking for Hovis. Eaton told the police that Hovis was with Davis. With the help of Wilson and Eaton, the police contacted Davis, who was on the way to the hospital with Hovis, on his cell phone. At Hovis's urging, Davis told the police that he did not know where Hovis was, but when told that he might be obstructing the police, he informed them that he and Hovis had arrived at the hospital. Hovis was arrested at the hospital.

1. Hovis maintains that he did not receive effective assistance of counsel because defense counsel failed to: (a) file a general demurrer to the indictment; and (b) object, move for a mistrial, or ask for curative instructions when a State's witness testified that Hovis was not supposed to be driving because he did not have a driver's license.

The proper standard to be employed in determining enumerations concerning ineffective assistance of counsel, whether based upon a claim of right arising under federal or state law, is the two-pronged test announced in *Strickland v. Washington*.[1] First, appellant must show that counsel's per-

---

[1] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

formance was deficient; second, he is required to show that he was prejudiced by counsel's deficient performance. There is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance, and that any challenged action by trial counsel might be considered sound trial strategy. As to the second prong, the question is whether there exists a reasonable probability that, but for his counsel's errors, the jury would have had a reasonable doubt regarding appellant's guilt, that is, but for counsel's unprofessional errors, the result of the proceeding would have been different.

(Punctuation omitted.) *Gomillion v. State.*[2]

In this case, after a hearing on the motion for new trial, the trial judge concluded that Hovis had failed to show either that his trial counsel's performance was deficient or that he was prejudiced by trial counsel's performance. "We must affirm a trial court's finding that a defendant has not been denied effective assistance of counsel unless it is clearly erroneous." (Punctuation omitted.) *Bogan v. State.*[3]

(a) Hovis argues that trial counsel should have filed a general demurrer to the indictment because the indictment was defective. Specifically, Hovis maintains that the indictment was defective because it did not contain all of the elements of the offense of hit and run listed in OCGA § 40-6-270 and that it did not, therefore, apprise him of the charge against him.

The true test of the sufficiency of an indictment that will withstand a general demurrer is laid down by Judge Bleckley as follows: If all the facts which the indictment charges can be admitted, and still the accused be innocent, the indictment is bad; but if, taking the facts alleged as premised, the guilt of the accused follows as a legal conclusion, the indictment is good. An indictment which charges the offense in the language of the defining statute and describes the acts constituting the offense sufficiently to put the defendant on notice of the offense with which he is charged survives a general demurrer.

(Citations and punctuation omitted.) *Wilson v. State.*[4]

The title of OCGA § 40-6-270 reads: "Hit and run; duty of driver to stop at or return to scene of accident." The essence of the crime of

---

[2] *Gomillion v. State*, 236 Ga. App. 14, 16 (3) (512 SE2d 640) (1999).
[3] *Bogan v. State*, 249 Ga. App. 242, 244 (2) (547 SE2d 326) (2001).
[4] *Wilson v. State*, 211 Ga. App. 486, 489 (4) (439 SE2d 701) (1993).

hit and run is failing to stop at or return to the scene of an accident in which one has been involved. *Langlois v. Wolford.*[5] The indictment under which Hovis was tried and convicted did,

> in the name and behalf of the citizens of Georgia, charge and accuse Michael G. Hovis with the offense of Hit and Run for that said accused, in the county of DeKalb and State of Georgia, on the 21st day of September, 2000 did drive an Acura Legend, the same being a motor vehicle, which was involved in an accident which resulted in serious injuries to Kevin Joy, a passenger in said Acura Legend, and did further fail to remain at the scene of said accident and seek to render aid to Kevin Joy contrary to the laws of said State, the good order, peace and dignity thereof.

This indictment was sufficient to put Hovis on notice of the crime with which he was charged; contrary to Hovis's contention, he could not admit the facts as charged in the indictment and still be innocent of committing the offense of hit and run. The argument that he was not apprised of the offense with which he was charged because the indictment did not charge him with failing to comply with other requirements of OCGA § 40-6-270, such as giving his name and address and the registration number of the car he was driving, is absurd. Hovis was guilty of hit and run when he left the scene of the accident in which he was involved, and he would still be guilty of hit and run even if he had given the injured Kevin Joy his name and address before he left.

(b) Hovis also contends that his trial counsel's assistance was ineffective because counsel failed to object, move for mistrial, or seek curative instructions when one of the State's witnesses testified that Hovis did not have a driver's license and was not supposed to be driving. Hovis argues that this statement was evidence of general bad character.

Pretermitting the question of whether this testimony constituted evidence of bad character, we find that defense counsel's failure to object to the testimony falls into the area of trial strategy.

> The standard regarding ineffective assistance of counsel is not errorless counsel and not counsel judged ineffective by hindsight, but counsel rendering reasonably effective assistance. In determining what constitutes ineffective assistance, a critical distinction is made between inadequate preparation and unwise choices of trial tactics and strategy.

---

[5] *Langlois v. Wolford*, 246 Ga. App. 209, 210 (539 SE2d 565) (2000).

Particularly in regard to matters of trial strategy and tactic, effectiveness is not judged by hindsight or result.

(Citations and punctuation omitted.) *Slade v. State*.[6]

The exchange to which Hovis objects occurred during the State's direct examination of Davis when the State's attorney was questioning Davis about why Hovis initially did not want to go to the hospital.

Q: Did you or Mr. Hovis or anyone in the car decide that you didn't want the police to know about this?
A: I mean I don't think so, no. I mean, I guess, maybe we both decided that it wasn't a good idea. I mean, you know.
Q: I'm trying to understand why privacy was important, Mr. Davis.
A: I mean, you know, you don't want to go to jail all the time, do you?
Q: I'm sorry?
A: You don't want to go to jail, I mean.
Q: Well, why did — was there any discussion about going to jail?
A: Because there was an accident, I mean, I don't know. Maybe because he wasn't supposed to be driving. He didn't have a driver's license. I don't know.
Q: Was there any discussion at all — did he tell you then that he had been driving the car?
A: I'm not sure about that now. I just know that he didn't have a driver's license and he wasn't supposed to be driving and that's possibly why he would run. I don't know.

At the hearing on the motion for new trial, Hovis's defense counsel was asked why he did not object to this testimony. He replied that he did not object because this testimony provided an explanation for Hovis's leaving the scene of the accident other than that he had been drinking. We find that trial counsel articulated a valid strategic reason for not objecting, and that strategy did not amount to ineffective assistance. *Slade*, supra.

2. Hovis's remaining enumerations of error, stemming as they do from the same argument addressed in Division 1 (a), are without merit.

*Judgment affirmed. Ellington and Phipps, JJ., concur.*

---

[6] *Slade v. State*, 270 Ga. 305, 307 (2) (509 SE2d 618) (1998).

DECIDED MARCH 13, 2003.

*Sharon Smith-Knox*, for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Rosemary W. Brewer, Sheila A. Connors, Assistant District Attorneys*, for appellee.