A05A0851. ADAMS v. THE STATE.
(623 SE2d 525)

ELLINGTON, Judge.
A Gwinnett County jury convicted Jerry Dwayne Adams of hijacking a motor vehicle, OCGA § 16-5-44.1 (b), battery, OCGA § 16-5-23, and two counts of kidnapping with bodily injury, OCGA § 16-5-40 (b).[1] Adams appeals from the trial court's denial of his motion for new trial. We find no error and affirm.

1. Adams claims that the evidence was insufficient to support his convictions. On appeal, this Court reviews the evidence presented in the light most favorable to the jury's verdict, and the defendant no longer enjoys a presumption of innocence. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). "When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citations, punctuation and emphasis omitted.) *Patterson v. State*, 272 Ga. App. 675, 676 (1) (613 SE2d 200) (2005).

So viewed, the evidence shows that on the evening of October 22, 2002, the victim visited her boyfriend at his Gwinnett County apartment. Later that night, she drove to the exit of the apartment

---

[6] See *Pavamani, P.C. v. Cole*, 215 Ga. App. 594, 595 (2) (451 SE2d 795) (1994); *Johnson v. Wills Mem. Hosp. &c.*, 178 Ga. App. 459, 461 (3) (343 SE2d 700) (1986) (physical precedent only).
[1] Adams was acquitted of aggravated sodomy, OCGA § 16-6-2, sexual battery, OCGA § 16-6-22.1 (b), and possession with intent to distribute marijuana, OCGA § 16-13-30 (j).

complex. Her infant daughter was in a car seat in the back seat of the car. As the victim was leaving the complex, she heard someone yell, and she slowed down and stopped. A man she did not know approached her car and asked if he could use the car's lighter. The victim told the man the lighter was not working, but he said he would "show [her] how to do it," and got in the car. The man then pointed a handgun at the victim and told her to drive.

As the victim drove around the area at gunpoint, the man told the victim that if she did "anything stupid, I'll hurt your baby." The man directed the victim to drive to a dark, secluded, wooded area, where he insisted that the victim perform oral sex on him, which she did while he held the gun. The man then took the victim's shirt off and told her to remove her pants. She refused to take off her pants, pushed the gun away, and began honking the car's horn and screaming.

The man struck the victim on her head several times with the gun and climbed into the driver's seat. The victim got out of the car, opened the rear door, unbuckled her child's seat belt, and grabbed the baby's arm. The man began to drive off, causing both the victim and the child to fall to the pavement. The victim screamed for help, and a woman came to her assistance, took her into a house, and called 911. As a result of the incident, the victim suffered scratches and a gash to her head, and her child's forehead was bruised.

The Gwinnett County police found the victim's car in the parking lot of the same apartment complex where the initial hijacking had occurred, and a wrecker took the car to police headquarters. There, a crime scene technician retrieved a wallet which was in an open container of Chinese food on the floor near the passenger's seat. Adams's identification card was in the wallet.

Using a photograph of Adams which they had on file, police prepared a six-person photographic lineup, which they showed to the victim the morning after the crime. The victim identified Adams as her attacker. Based on the victim's identification, the police obtained an arrest warrant for Adams at the address listed on his identification card. Police officers went to the address, and Adams's mother told them he was not home, but suggested he might be at his sister's house.

Police officers went to the house, which was across the street from the lot where the car had been found. Adams was asleep in a bedroom. The officers woke Adams up, informed him of his *Miranda* rights, and placed him under arrest. Adams appeared tired and lethargic, but agreed to answer the officers' questions. The officers informed Adams that a young woman had been assaulted and her car taken at gunpoint, and Adams initially denied any involvement. However, when the officer accused Adams of throwing the victim's baby out of the car, Adams replied that he allowed the victim to get her

baby out of the car. When the officer accused Adams of pointing the gun at the victim's head, Adams denied it and said that he had placed the gun at her side. Adams then admitted that he had been with the victim and that he had wanted the car and money. He also admitted that he had fondled her breasts, but denied forcing her to perform oral sex. At trial, the victim identified Adams as the man who hijacked her car.

Based on the foregoing, we find that the evidence was sufficient for any rational trier of fact to find Adams guilty beyond a reasonable doubt of the crimes for which he was convicted. *Cook v. State*, 252 Ga. App. 86, 86-87 (1) (555 SE2d 759) (2001).

2. Adams claims the trial court erred by denying his motion for a mistrial when a prosecution witness referred to Adams's prior arrest. "We review a trial court's denial of a motion for a mistrial based on the injection of improper character evidence for manifest abuse of the court's discretion." (Footnote omitted.) *Torres v. State*, 258 Ga. App. 393, 395 (574 SE2d 438) (2002).

The prosecutor asked a police witness what the police did with the information provided by Adams's identification card, and the witness responded that the police checked their records, and "we determined that there had been a prior arrest in Gwinnett County." Defense counsel moved for a mistrial based on the introduction of impermissible character evidence. The trial court denied the motion, but offered to give curative instructions to the jury. Defense counsel refused the trial court's offer to give a curative instruction and did not renew the motion for a mistrial. The issue was therefore waived for purposes of appeal. "Since defense counsel declined the trial court's offer to give curative instructions to the jury, [Adams] will not now be heard to complain." (Citations and punctuation omitted.) *Pickren v. State*, 272 Ga. 421, 426 (9) (530 SE2d 464) (2000). See also *Lewis v. State*, 198 Ga. App. 808, 809 (2) (403 SE2d 233) (1991) (defendant waived appellate review when he declined trial court's offer of curative instructions and did not renew motion for mistrial).

3. Adams claims the trial court erred in admitting his custodial statements to police. "In determining the admissibility of a statement, a trial court must find by a preponderance of evidence that the statement was made knowingly and voluntarily. Unless clearly erroneous, factual and credibility determinations made at a *Jackson-Denno* hearing must be accepted by appellate courts." (Citations omitted.) *Wallace v. State*, 267 Ga. App. 801, 807 (6) (600 SE2d 808) (2004).

Adams contends that he did not knowingly and voluntarily waive his rights because police awoke him and questioned him while he was lethargic and intoxicated. At the *Jackson-Denno* hearing, the interrogating officer testified that police woke Adams up around 9:30 a.m.,

and that, although Adams was lethargic and mumbling at first, his speech became clearer as he woke up. The officer also testified that Adams agreed to answer questions after being informed of his *Miranda* rights, and that Adams answered without promise of benefit or fear of injury. Although Adams smelled of marijuana, the interrogating officer testified that if Adams was under the influence of marijuana, it did not appear to interfere with Adams's ability to understand. According to the officer, Adams "told me he understood [his rights]. I asked if he understood and he said he understood." The trial court concluded that Adams made a voluntary statement to police. "Under the circumstances of this case, we find that the trial court was authorized to conclude that, despite [Adams's possible intoxication], he gave a voluntary statement and made a knowing and intelligent waiver of his *Miranda* rights." (Citations omitted.) *Cunningham v. State*, 255 Ga. 727, 730 (2) (342 SE2d 299) (1986). Accord *Philmore v. State*, 263 Ga. 67, 68 (2) (428 SE2d 329) (1993) (although the defendant was under the influence of cocaine at the time of the police interview, the trial court was authorized to conclude the defendant made a voluntary statement to police).

4. Adams contends the trial court erred in failing to grant a mistrial when the prosecutor made the following statement during opening arguments: "When [Adams] got close enough [to the victim's car], . . . he grabbed the passenger door, opened it up, jumped inside and showed [the victim] a 9 millimeter Jennings handgun. At that point, she was trapped." Adams argues that the prosecutor's argument violated a prior ruling by the trial court and referred to inadmissible evidence.

The record shows that police officers searched Adams's sister's house at the time of his arrest and found a handgun. Adams filed a motion to suppress the handgun, arguing that the search was illegal. The trial court reserved a ruling on the motion before trial, but it instructed the State not to mention during opening arguments that a handgun had been found. Notably, the trial court did not prohibit the State from mentioning during opening arguments that Adams had a handgun during the hijacking and that he hit the victim with the gun. The trial court later granted Adams's motion to suppress the handgun. Although the victim testified about seeing Adams's gun while he held her at gunpoint, she did not identify the specific model and caliber of handgun Adams used during the hijacking. Therefore, there was no evidence presented during trial to support the prosecutor's reference to the gun as a "9 millimeter Jennings handgun." Under these circumstances, Adams contends the trial court was required to order a mistrial. See *Alexander v. State*, 270 Ga. 346, 349 (2) (509 SE2d 56) (1998) (finding that the trial court should have granted defendant's motion for mistrial when prosecutor's opening

statement referred to facts that were not supported by evidence at trial, the prosecutor failed to explain why he did not present the necessary evidence, and the remaining evidence was not sufficient to overcome the prejudice).

Pretermitting whether the prosecutor's statement in this case actually violated the trial court's ruling,[2] the record shows that defense counsel did not object to the statement and did not move for a mistrial on that basis. Accordingly, the issue was waived. See *Todd v. State*, 274 Ga. 98, 99 (2) (549 SE2d 116) (2001) (where the State referred to prejudicial evidence in its opening statement that it failed to introduce at trial, but defense made no motion for mistrial at the close of the State's case, the issue was not preserved for appellate review).

5. Adams also contends that during voir dire the State improperly struck two African-American jurors based on their race. See *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). However, Adams failed to challenge the strikes. "[A]ny claim under *Batson* should be raised prior to the time the jurors selected to try the case are sworn." (Citation and punctuation omitted.) *Greene v. State*, 260 Ga. 472, 473 (1) (396 SE2d 901) (1990). Accord *Holmes v. State*, 273 Ga. 644, 645 (2) (543 SE2d 688) (2001). Adams failed to preserve the issue for review.

6. Adams claims that he received ineffective assistance of trial counsel. To prevail on a claim of ineffective assistance of counsel, an appellant must show deficient performance on the part of counsel and prejudice to his defense resulting from that deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984). A successful ineffective assistance claim must satisfy both prongs of the *Strickland* test. *Wilkes v. State*, 269 Ga. App. 532, 536 (4) (604 SE2d 601) (2004). "The trial court's determination with respect to effective assistance of counsel will be affirmed unless the trial court's findings are clearly erroneous." (Citation omitted.) *Chapman v. State*, 273 Ga. 348, 350 (2) (541 SE2d 634) (2001).

(a) Adams claims his trial counsel was deficient in failing to preserve his motion for a mistrial after the State elicited testimony that Adams had been previously arrested in Gwinnett County. We disagree.

---

[2] At the motion for new trial hearing, the trial court found that the prosecutor's reference to the handgun did not violate its pre-trial ruling prohibiting the State from mentioning that the gun had been found by police.

Pretermitting whether the officer's passing reference to Adams's previous arrest impermissibly placed his character at issue,[3] the record shows that defense counsel declined the trial court's offer of a curative instruction. See Division 2, supra. Defense counsel testified at the hearing on the motion for new trial that one of the reasons for doing so was his reluctance to reinforce the matter in the jurors' minds. "Deliberate choices of trial strategy and tactics are within the province of trial counsel after consultation with his client." (Citation omitted.) *Hudson v. State*, 250 Ga. 479, 486 (8) (299 SE2d 531) (1983). See, e.g., *Hovis v. State*, 260 Ga. App. 278, 281-282 (1) (b) (582 SE2d 127) (2003) (trial counsel was not ineffective where he articulated a valid strategic reason for not objecting to purported bad character evidence).

Adams argues, however, that trial counsel's testimony at the motion for new trial hearing showed that counsel believed he would waive his motion for a mistrial by agreeing to a curative instruction. Even if we were to accept Adams's argument that his trial counsel was deficient in mistakenly waiving a motion for mistrial he intended to preserve, Adams must also show that he was prejudiced by the mistake in order to prevail on his ineffective assistance claim. In view of the overwhelming evidence supporting the verdict, we find that Adams has failed to show that "but for the deficiency, there was a reasonable probability that the outcome of the trial would have been different." (Citation omitted.) *Fulton v. State*, 278 Ga. 58, 65 (8) (597 SE2d 396) (2004). See *Sneed v. State*, 267 Ga. App. 640, 641-642 (2) (c) (600 SE2d 720) (2004) (defendant failed to show he was prejudiced by his counsel's failure to object to statements purported to show his bad character). The trial court's finding that there was no ineffective assistance is not clearly erroneous.

(b) Adams also contends trial counsel was ineffective for failing to object or move for a mistrial after the prosecutor referred to the specific caliber and model of a handgun during opening argument. At the hearing on the motion for new trial, defense counsel admitted that his failure to object during the opening argument was a mistake. The trial transcript shows, however, that the victim testified that Adams showed her a gun when he climbed into her car, forced her at gunpoint to drive to a secluded area, and repeatedly hit her on the head with the gun before stealing her car. Further, Adams confessed to pointing a gun at the victim. Given such overwhelming testimony regarding the fact that Adams had a gun during the hijacking, Adams has failed to show that it was reasonably probable that the outcome of the trial

---

[3] See *Taylor v. State*, 272 Ga. 559, 561 (2) (c) (532 SE2d 395) (2000) ("mere mention that a defendant has been in jail falls short of placing his character at issue") (citation omitted).

would have differed but for his trial counsel's mistake. See *Shahid v. State*, 276 Ga. 543, 544-545 (4) (579 SE2d 724) (2003) (where in violation of a prior ruling by the trial court, the prosecutor referred during opening argument to the defendant's propensity to carry a gun, defense counsel's failure to move for a mistrial was not ineffective assistance in view of the overwhelming evidence implicating the defendant). We find no error in the trial court's conclusion that defense counsel's failure to object did not amount to ineffective assistance.

(c) Finally, Adams contends he received ineffective assistance because his trial counsel failed to make a *Batson* challenge. Adams is African-American, and the State used peremptory strikes against two of the three African-Americans in the jury pool. The record shows, however, that defense counsel decided not to raise a *Batson* challenge because he believed the challenge would not be successful. This was not an unreasonable decision given that the State gave racially neutral reasons for its strikes. See, e.g., *Wolfe v. State*, 273 Ga. 670, 672-673 (3) (544 SE2d 148) (2001) (where opponent of a peremptory challenge makes a prima facie showing of racial discrimination, the burden of production shifts to the proponent of the strike to give a race-neutral reason for the strike). Adams has not carried his burden of showing that trial counsel's actions "fell outside the wide range of reasonable professional assistance." (Citations and punctuation omitted.) *Hammond v. State*, 264 Ga. 879, 885 (7) (b) (452 SE2d 745) (1995). Therefore, we find no error in the trial court's finding that defense counsel's decision to waive a *Batson* challenge did not constitute deficient performance. See *Sharp v. State*, 278 Ga. 352, 353-354 (3) (602 SE2d 591) (2004) (defense counsel believed the State had valid reasons for its use of peremptory strikes and defendant failed to show the State used its strikes improperly so as to support a *Batson* challenge); *Polk v. State*, 225 Ga. App. 257, 259 (1) (d) (483 SE2d 687) (1997) (counsel testified that he did not believe, based on the racial constitution of the jury pool, that there was a viable *Batson* challenge).

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED OCTOBER 25, 2005 —
RECONSIDERATION DENIED NOVEMBER 14, 2005 — 

*Brenda J. Bernstein*, for appellant.
*Daniel J. Porter, District Attorney, John A. Steakley, Assistant District Attorney*, for appellee.