**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**September 6, 2012**

# In the Court of Appeals of Georgia

A12A1001. SHERRELL v. THE STATE.

DILLARD, Judge.

Following a jury trial, Patrick Sherrell was convicted of two counts of aggravated assault upon his wife. Sherrell appeals his convictions, arguing that (1) the State failed to prove venue beyond a reasonable doubt, (2) the trial court erred in prohibiting letters written to him by his wife from being sent out with the jury during deliberations pursuant to the State's continuing-witness objection, and (3) his trial counsel rendered ineffective assistance. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that Sherrell and his wife, C. S., met in January 2008, began dating in August 2008, and were married after just a five-day courtship. The couple initially lived with C. S.'s

---

[1] *See Strozier v. State*, 314 Ga. App. 432, 433 (724 SE2d 446) (2012).

parents, but approximately one month after their marriage, they moved in with Sherrell's mother, who lived in the small town of Shady Dale in Jasper County. It was during the early days of their marriage that Sherrell began physically abusing C. S., and he continued to do so on a regular basis over the course of the next two years.

On November 14, 2009, C. S. went to a baby shower at her uncle's home. Upon her arrival, several of C. S.'s family members noticed that she had bruises on her face and neck and that she had difficulty sitting. When questioned by her family about the injuries, C. S. admitted that two weeks earlier—on October 31, 2009—Sherrell had beaten her with a belt and the wooden handle of a toilet plunger. Consequently, C. S.'s aunt and uncle took her to the Jasper County Sheriff's Department, where C. S. repeated her allegations to investigators. And while there, a female deputy photographed C. S.'s injuries, which—in addition to the bruises on her face and neck—included two open sores on her buttocks. Immediately thereafter, C. S.'s aunt and uncle took C. S. to the hospital, where her injuries were treated.

After speaking with C. S. and several of her family members, an investigator from the Jasper County Sheriff's Department went to Sherrell's mother's residence in Shady Dale, where Sherrell and C. S. were still living, and arrested Sherrell. Shortly thereafter, Sherrell was released on bond. And although one of the conditions

of his bond prohibited him from having any contact with C. S., the couple reunited a short time after Sherrell's release.

On May 6, 2010, a Jasper County sheriff's deputy was dispatched to Sherrell's mother's residence in Shady Dale in response to a domestic-disturbance call. When the deputy arrived, Sherrell and C. S. were both there, and the deputy observed bruises on C. S.'s face and arms and a bandage on her forehead. When asked how she sustained her injuries, C. S. responded that they were the result of falling down and "rough sex." Although extremely skeptical of C. S.'s explanation, the deputy did not arrest Sherrell but instead took Sherrell and C. S.'s driver's licenses with him to the sheriff's office so that the matter could be further investigated.

The very next day, the investigator who had arrested Sherrell for the October 31, 2009 incident was tending to an unrelated matter at the courthouse when he was informed that Sherrell was in the lobby of the sheriff's office, requesting that his driver's license be returned. Upon arrival, the investigator saw Sherrell's truck in the parking lot with what appeared to be only Sherrell's dog inside the vehicle. After entering the building and briefly speaking with Sherrell, the investigator walked back outside with the intention of going to Sherrell's mother's residence to check on C. S. As the investigator and another deputy were about to leave, they observed Sherrell's

vehicle leaving the parking lot. However, in addition to the dog, the investigator now observed that C. S.—who apparently had been attempting to conceal herself by ducking—was also in the truck with Sherrell.

The investigator immediately blocked Sherrell's truck with his own vehicle and asked both Sherrell and C. S. to exit. As they complied, the investigator saw that C. S.'s face was bruised, both of her eyes were swollen, and her forehead was bandaged. The investigator also noticed that C. S. seemed to be in pain on her right side. Initially, C. S. denied that Sherrell had abused her, and instead, claimed again that her injuries were the result of "rough sex." Unconvinced, the investigator asked both C. S. and Sherrell to come with him into the Sheriff's office, at which point, C. S.'s injuries were photographed and Sherrell was arrested for aggravated assault and violating a condition of his bond. Eventually, C. S. admitted that she sustained her injuries as a result of Sherrell beating her with a belt and his fists.

Thereafter, Sherrell was indicted on two counts of aggravated assault,[2] both of which related to the May 6, 2010 incident. Prior to trial, the State successfully moved

---

[2] *See* OCGA § 16-5-21 (a) (2) ("A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury. . . .").

to introduce details related to the October 31, 2009 incident, in which Sherrell beat C. S. with the plunger, as similar-transaction evidence. And during Sherrell's trial, C. S. testified about the history of physical abuse she had suffered at Sherrell's hands, including the specific incidents that occurred on October 31, 2009 and May 6, 2010. Additionally, several of the sheriff's deputies involved testified concerning their investigations, and photographs of C. S.'s injuries were admitted into evidence.

Sherrell called several witnesses to testify in his defense. In addition, Sherrell testified and denied beating C. S. Instead, he claimed that C. S. had a long history of mental-health problems, including depression and schizophrenia, and that her injuries were the result of a combination of self-infliction, her own clumsiness, and "rough sex" that she initiated. Nevertheless, at the conclusion of the trial, the jury convicted Sherrell on both counts.

Subsequently, Sherrell obtained new counsel and filed a motion for new trial, alleging, *inter alia*, that his trial counsel rendered ineffective assistance. After conducting a hearing on Sherrell's motion, during which Sherrell's trial counsel testified, the trial court issued an order denying same. This appeal follows.

At the outset, we note that when a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer

enjoys a presumption of innocence.[3] In evaluating the sufficiency of the evidence, we do not weigh the evidence or determine witness credibility, "but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[4] Accordingly, a jury's verdict will be upheld "[a]s long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case . . . ."[5]

1. Sherrell contends that the State failed to prove venue beyond a reasonable doubt. We disagree.

With regard to venue, the Georgia Constitution and our statutory law require that a criminal defendant be tried in the county in which the alleged crime was committed.[6] Indeed,

> [v]enue is a jurisdictional fact, and is an essential element in proving that one is guilty of the crime charged. Like every other material allegation in the indictment, venue must be proved by the prosecution

---

[3] *See, e.g.*, *English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010).

[4] *Joiner v. State*, 299 Ga. App. 300, 300 (682 SE2d 381) (2009); *see also Lott v. State,* 303 Ga. App. 775, 775 (1) (694 SE2d 698) (2010).

[5] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted).

[6] *See* Ga. Const. 1983, Art. VI, Sec. II, Par. VI; OCGA § 17-2-2 (a).

beyond a reasonable doubt. Proof of venue is a part of the State's case, and the State's failure to prove venue beyond a reasonable doubt renders the verdict contrary to law, without a sufficient evidentiary basis, and warrants reversal.[7]

But the State may establish venue by whatever means of proof are available to it, including "direct and circumstantial evidence."[8] Importantly, whether the evidence as to venue satisfied the reasonable-doubt standard "is a question for the jury, and its decision will not be set aside if there is any evidence to support it."[9]

Here, C. S. testified that shortly after marrying Sherrell, the couple moved into Sherrell's mother's residence, which was in the town of Shady Dale in Jasper County. And she further testified that she was living at the Shady Dale residence at the time of the May 6, 2010 incident, which was the subject of the charges in the indictment. In addition, the Jasper County Sheriff's deputy who was dispatched to investigate the domestic disturbance at the Shady Dale residence on May 6, 2010, testified that when

---

[7] *Jones v. State*, 272 Ga. 900, 901-02 (2) (537 SE2d 80) (2000) (footnotes and punctuation omitted).

[8] *Bentley v. State*, 314 Ga. App. 599, 600 (1) (724 SE2d 890) (2012) (punctuation omitted).

[9] *Chavez v. State*, 306 Ga. App. 272, 273 (701 SE2d 902) (2010) (punctuation omitted).

he met with C. S. at the residence she had bruises on her face and neck and a bandage on her forehead. Given this testimony, the evidence was sufficient to establish that the aggravated assaults that Sherrell inflicted upon his wife occurred in Jasper County.[10]

Furthermore,

[i]n light of the well-settled principle that public officials are believed to have performed their duties properly and not to have exceeded their authority unless clearly proven otherwise, the jury was authorized to find the [Jasper County investigator] acted within the territorial jurisdiction in which he testified he was employed.[11]

Accordingly, the totality of the evidence sufficed to show venue in Jasper County.[12]

2. Sherrell also contends that the trial court erred in prohibiting letters written to him by his wife from being sent out with the jury during deliberations, pursuant to the State's objection that doing so would violate the continuing-witness rule. We

---

[10] *See Hargrave v. State*, 311 Ga. App. 852, 854 (1) (717 SE2d 485) (2011) (holding that venue was proven based on victim's testimony that molestation occurred in a specific residence and police officers testified that the residence in question was located in Fayette County).

[11] *Chavez*, 306 Ga. App. at 274 (punctuation omitted).

[12] *Id.* (punctuation omitted).

agree that the trial court misapplied the continuing-witness rule in sustaining the State's objection, but we disagree that the court's misapplication of the rule requires reversal of Sherrell's convictions.

Under well-settled Georgia law, the continuing-witness objection is based on the notion that written testimony is "heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand," but that it is "unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once."[13]

Most commonly, the types of documents that have been held subject to the continuing-witness rule include "affidavits, depositions, written confessions, statements, and dying declarations."[14] And these documents, "which generally contain their makers' assertions of purported truths, are ascribed evidentiary value only to the extent that their makers are credible."[15]

---

[13] *Davis v. State*, 285 Ga. 343, 348 (8) (676 SE2d 215) (2009) (punctuation omitted).

[14] *Id.* (punctuation omitted).

[15] *Id.* (punctuation omitted).

Here, the challenged exhibits consisted of two letters to Sherrell from his wife: The first was written a few weeks prior to the October 31, 2009 incident, and the second was written several months after the May 6, 2010 incident. In both letters, C. S. expressed her love for Sherrell, apologized for her own behavior, and thanked him for helping her to address her mental-health problems. The letters were admitted into evidence, and Sherrell's trial counsel read significant parts from both during his extensive cross-examination of C. S. However, pursuant to the State's objection, the trial court prohibited the letters from going out with the jury during its deliberations. But given that the letters were not written testimony and did not derive their evidentiary value solely from the credibility of C. S., the trial court erred in doing so.[16]

Nevertheless, a misapplication of the continuing-witness rule does not require reversal if the error was harmless.[17] In this respect, our Supreme Court has held that "[i]f it is highly probable that the error did not contribute to the judgment then the

---

[16] *See Bollinger v. State*, 272 Ga. App. 688, 692 (2) (613 SE2d 209) (2005) (holding that allowing letters written by defendant to go into jury room during deliberations did not violate the continuing-witness rule); *Vinyard v. State*, 177 Ga. App. 188, 190 (1) (338 SE2d 766) (1985) (holding that letter written by defendant's brother and sent from prison did not violate continuing-witness rule).

[17] *See Dockery v. State*, 308 Ga. App. 502, 506 (4) (707 SE2d 889) (2011).

error is harmless."[18] And the proper test to determine whether error is harmless—due to overwhelming evidence of guilt—is not whether there is sufficient other evidence to convict "but whether it is highly probable that the error did not contribute to the judgment."[19] Here, as previously noted, Sherrell's trial counsel read several parts of both letters during the trial, and he cross-examined C. S. extensively regarding the content of those letters. Thus, despite not having the letters during deliberations, the jury was made well aware of C. S.'s mental-health problems and of the fact that even after Sherrell was arrested for physically abusing her, C. S. professed her love for him and blamed herself for their marital problems. Furthermore, in light of C. S.'s testimony that Sherrell repeatedly physically abused her and the corroboration of her testimony by family members, police officers, and medical professionals who observed the extent of her injuries, the evidence that Sherrell committed the aggravated assaults against his wife was overwhelming. Accordingly, it is highly

---

[18] *Id.* at 506-07 (4) (punctuation omitted).

[19] *Id.* at 507 (4) (punctuation omitted).

probable that preventing the letters from going out with the jury during deliberations did not contribute to the guilty verdicts.[20]

3. Sherrell further contends that the trial court erred in denying his claim that his trial counsel rendered ineffective assistance. Once again, we disagree.

It is axiomatic that in order to prevail on his claim of ineffective assistance of counsel, Sherrell must show that counsel's performance was deficient and that the deficient performance so prejudiced him that "there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[21] In addition, a criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct.[22] And unless clearly erroneous, we will uphold a trial court's factual determinations

---

[20] *See Dunagan v. State*, 255 Ga. App. 309, 311 (3) (565 SE2d 526) (2002) (holding that error committed by trial court in granting State's continuing-witness objection that precluded jury from taking document from victim's child protection agency file during deliberations was harmless); *Morgan v. State*, 226 Ga. App. 327, 329 (4) (c) (486 SE2d 632) (1997) (holding that error by trial court in refusing to allow examining nurse's worksheet to go out with jury on ground that it violated the continuing-witness rule was harmless).

[21] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see also Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 S.Ct. 2052, 80 LE2d 674) (1984).

[22] *Chapman*, 273 Ga. at 350 (2).

with respect to claims of ineffective assistance of counsel.[23] A trial court's legal conclusions in this regard, however, are reviewed *de novo*.[24] With these guiding principles in mind, we will now address Sherrell's claim.

During his cross-examination of the Jasper County Sheriff's Department's lead investigator, Sherrell's trial counsel asked if he was aware of C. S.'s mental state when he spoke to her in the parking lot of the sheriff's office the day after the May 6, 2010 incident. The investigator responded, "Well, she was distressed. She—we have a term that's considered the battered wife syndrome where they actually go into a mode of protection for against the abuser. She exhibited that." Sherrell's trial counsel did not object to this testimony, and the investigator went on to discuss the fact that C. S. initially refused medical treatment and initially denied that Sherrell was responsible for her injuries.

On appeal, Sherrell argues that the Sheriff's Department's investigator's reference to the battered-wife syndrome constituted expert testimony, which the

---

[23] *Id.*

[24] *Henderson v. State*, 303 Ga. App. 898, 898 (1) (695 SE2d 334) (2010).

13

investigator was not qualified to provide,[25] and thus, his trial counsel's failure to object to this testimony constituted ineffective assistance. However, even if we were to accept Sherrell's argument that his trial counsel was deficient in failing to object to the investigator's passing reference to the battered-woman syndrome, Sherrell must also show that he was prejudiced by the mistake in order to prevail on his ineffective assistance claim.[26] Given, as previously noted *supra*, the overwhelming evidence supporting the verdict, we find that Sherrell has "failed to show that but for the deficiency, there was a reasonable probability that the outcome of the trial would

---

[25] *See generally Smith v. State*, 247 Ga. 612, 619 (277 SE2d 678) (1981) (noting that an explanation of the battered-woman's syndrome, specifically why a person suffering from battered-woman's syndrome would not leave her mate, would not inform police or friends, and would fear increased aggression against herself, should be provided by expert testimony as jurors could not ordinarily draw such conclusions for themselves); *see also Sinns v. State*, 248 Ga. 385, 387 (3) (283 SE2d 479) (1981) (citing *Smith* and noting that the battered-wife syndrome is a "complex subject" involving "a unique and almost mysterious area of human response and behavior").

[26] *See Adams v. State*, 276 Ga. App. 319, 324 (6) (a) (623 SE2d 525) (2005).

have been different."[27] Accordingly, the trial court did not err in denying Sherrell's claim that his trial counsel rendered ineffective assistance.[28]

*Judgment affirmed. Ellington, C. J., and Phipps, P. J., concur.*

---

[27] *Id.* (punctuation omitted); *see Port v. State*, 295 Ga. App. 109, 114 (2) (e) (671 SE2d 200) (2008) (holding that trial counsel's failure to object to reference within a long email that defendant owned weapons was harmless given the overwhelming evidence against defendant).

[28] *See Adams*, 276 Ga. App. at 324 (6) (a).