## S99A0643. LYONS v. THE STATE.
### (522 SE2d 225)

THOMPSON, Justice.

A jury found William Henry Lyons guilty of malice murder, felony murder with the underlying felony of aggravated assault, and armed robbery in the stabbing death of Cecil Henderson.[1] Although the State sought the death penalty, the jury fixed the sentence at life imprisonment without possibility of parole. Finding no reversible error, we affirm.

The elderly victim, Cecil Henderson, operated a "loan business" from his home where he customarily kept several thousand dollars in cash. He was last seen alive on the evening of December 6, 1994. His body was discovered in the living room of his home on the following evening; his throat had been cut, nearly severing the head, and there were cuts to the face, back, and upper chest. The room was in disarray, and a small kitchen knife was found near the victim. No money remained on the premises.

Lyons was among Henderson's loan clientele and acquaintances who were interviewed by the police. He initially denied any contact with the victim at the relevant times, but when a witness informed police that he had given Lyons a ride to the vicinity of the victim's residence on the evening of December 6 at about 9:30 p.m., Lyons admitted his presence in Henderson's home that night. Lyons further told the investigating officers that he owed Henderson $110; that Henderson became agitated about the money and threatened to kill him; that Henderson produced a knife; and that he (Lyons) stabbed the victim with the knife during the ensuing struggle. Lyons admitted removing currency from the victim's coffee table, but maintained that the victim was alive when he fled from the residence. The medical examiner testified that the fatal injury was caused by a stab

---

[1] The crimes occurred between December 6 and December 7, 1994. A true bill of indictment was returned on February 20, 1995. On April 6, 1995, the State served Notice of Intent to Seek the Death Penalty and Notice of Aggravating Circumstances. Trial commenced on May 12, 1997, and the jury returned a verdict of guilty on all counts on May 20, 1997. After hearing evidence in the sentencing phase, the jury found the existence of four aggravating circumstances, and fixed the sentence at life without parole on May 21, 1997. A sentence of life without parole was imposed for malice murder, plus 20 years for armed robbery. A motion for new trial was filed on June 9, 1997, amended on January 13, 1998, and denied on November 5, 1998. A notice of appeal was filed on December 1, 1998. The case was docketed in this Court on February 1, 1999, and oral argument was heard on April 13, 1999.

wound to the victim's back.

1. The evidence was sufficient to enable a rational trier of fact to find Lyons guilty of the offenses for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The trial court did not err in refusing to grant Lyons' motion to disqualify the district attorney's office from prosecution of the case.

It was established that two attorneys who had been appointed to represent Lyons following his arrest withdrew their representation when they were hired by the district attorney. In each instance, the attorney had represented Lyons for only a few months; and Lyons acknowledges that neither former attorney had improper communications about his case while in the employ of the district attorney. Lyons continued to be represented by the same lead trial counsel during the remainder of the pretrial period (more than 14 months), during trial, and presently on appeal. At no time was Lyons without continuous representation.

Other than some unspecified allegations of lingering "mistrust" in the defense team, Lyons has not shown how he was prejudiced by the withdrawal of his former attorneys. He nevertheless asserts that prejudice must be presumed under *United States v. Cronic*, 466 U. S. 648 (104 SC 2039, 80 LE2d 657) (1984), and that the refusal to disqualify the district attorney resulted in a deprivation of his Sixth Amendment right to effective assistance of counsel and to a fair trial. *Cronic* does not support this position. It is only when "the surrounding circumstances made it so unlikely that any lawyer could provide effective assistance of counsel that ineffectiveness was properly presumed without inquiry into actual performance at trial." Id. at 466 U. S. 661. See, e.g., *Powell v. Alabama*, 287 U. S. 45 (53 SC 55, 77 LE 158) (1932). As in *Cronic*, Lyons has not demonstrated a "breakdown in the adversarial process that would justify a presumption that [his] conviction was insufficiently reliable to satisfy the Constitution." *Cronic*, supra at 662. Furthermore, we do not perceive how disqualification of the district attorney from prosecution of the case would have cured any purported violation of Lyons' Sixth Amendment right to counsel. See generally *Pruitt v. State*, 270 Ga. 745 (19) (514 SE2d 639) (1999).

Alternatively, Lyons asserts that the actions of the district attorney, although unintentional, raise an appearance of impropriety. However, "[a] theoretical or speculative conflict will not impugn a conviction which is supported by competent evidence." *Lamb v. State*, 267 Ga. 41, 42 (1) (472 SE2d 683) (1996).

3. Lyons asserts that the trial court erred in failing to exclude his custodial statements on the basis that they were involuntary and coerced.

It was shown at a *Jackson v. Denno* hearing that *Miranda* warn-

ings were administered or renewed when required, that each of these rights was read to the defendant and explained by the investigating officer who also offered any needed clarification, and that Lyons replied that he understood and executed a written waiver of those rights.

The crux of Lyons' argument is that his *Miranda* waiver was not knowingly made and his custodial statements were not reliable because he established by expert testimony at the *Jackson v. Denno* hearing that he is mildly mentally retarded and functionally illiterate. In response, an expert for the State agreed that Lyons was intellectually below average, but opined that he was not mentally retarded and that he had the mental capacity to understand the *Miranda* warnings.

A defendant may be capable of understanding and waiving his *Miranda* rights even where there is evidence of moderate retardation. *Brown v. State*, 262 Ga. 833 (6) (426 SE2d 559) (1993).

> Retardation, and the extent of the same as presented by the ambit of the evidence . . . is one of the facts that had to be determined by the trial court at the *Jackson v. Denno* hearing. Once the determination is made it will be approved by this [C]ourt unless we find that it is clearly erroneous.

Id. at 835. See also *Dixon v. State*, 267 Ga. 136 (3) (475 SE2d 633) (1996).

Applying a totality of the circumstances test, the trial court found that Lyons understood his rights, and that his statements were the product of free will. See *Pierce v. State*, 238 Ga. 126 (231 SE2d 744) (1977) (burden is on the State to establish by a preponderance of the evidence the voluntariness of custodial statements). The court's findings are supported by the record. Accordingly, there was no error in admitting the statements at trial.

4. Any complaint about improper responses by a prospective juror during voir dire was waived by the failure to timely object. *Earnest v. State*, 262 Ga. 494 (1) (422 SE2d 188) (1992). Nevertheless, review of the record fails to demonstrate that any comments during voir dire were inherently prejudicial or that Lyons was deprived of a jury free from suspicion of prejudgment. *Loftus v. State*, 230 Ga. App. 582 (2) (497 SE2d 60) (1998).

5. Lyons asserts that the trial court erred in denying his *Batson* motion. After it was established that seven of the district attorney's nine peremptory strikes were directed at African-American jurors, the court required the State to proffer race-neutral reasons for those strikes. The record shows that each of the seven jurors knew Lyons in some fashion: one was related to Lyons' family; another who was

familiar with Lyons and his family also had a child with a crack cocaine problem; two were Lyons' co-workers; one attended school with Lyons but failed to disclose that relationship on the juror questionnaire; and two who stated that they knew the defendant also had children who were prosecuted by the district attorney's office.[2] The trial court was authorized to conclude that each of the proffered reasons was race-neutral and that there was no purposeful discriminatory intent on the part of the State. See *Menefee v. State*, 270 Ga. 540 (2) (512 SE2d 275) (1999); *Marshall v. State*, 266 Ga. 304 (2) (466 SE2d 567) (1996); *Henry v. State*, 265 Ga. 732 (2) (462 SE2d 737) (1995); *Davis v. State*, 263 Ga. 5 (10) (426 SE2d 844) (1993).

Because Lyons' *Batson* motion was not specifically directed at Caucasian females, any such complaint has been waived on appeal. *Sears v. State*, 268 Ga. 759, 764 (493 SE2d 180) (1997).

6. It is asserted that the trial court erred in denying a defense motion for mistrial after a law enforcement officer in a nonresponsive answer during examination stated, "that . . . was after he had taken the polygraph test."

" '(T)he mere fact that the jury [was] apprised that a lie detector test was taken is not necessarily prejudicial *if* no inference as to [the] result is raised.' " *White v. State*, 255 Ga. 210, 213 (6) (336 SE2d 777) (1985). No such inference was raised here. And because the grant of a mistrial was not "essential to preserve the right to a fair trial," *Williams v. State*, 251 Ga. 749, 803 (15) (312 SE2d 40) (1983), we will not disturb the trial court's exercise of its discretion.

Nor was a mistrial demanded because the court's microphone was inadvertently left on during a bench conference regarding the possible effects the comment had on the jury. The unrebutted evidence shows that the conversation was not even audible to individuals within close proximity of the bench.

7. In an in-chambers conference prior to opening arguments, defense counsel notified the court that a subpoenaed defense witness, Wanda Willis, had been severely beaten one night earlier. It was shown that Willis disclosed to her companion, Deborah Green, that another defense witness, Ralph Powell, beat her to discourage her from testifying. When Willis was called as a defense witness, she was asked on direct examination how she sustained the bruises to her face, whereupon the court sustained a relevancy objection from the State. Although defense counsel attempted to respond, the court sustained a further objection to such discussion within the presence of the jury. Lyons now asserts that the court erred in sustaining the rel-

---

[2] The final composition of the jury included seven female, five male, two African-American and ten Caucasian jurors.

evancy objection and in disallowing an offer of proof concerning the expected testimony of defense witness Deborah Green.

First, we do not view the court's ruling as in any way preventing the defense from making an offer of proof. The second objection went merely to the fact that any such discussion should not take place in the presence of the jury. Defense did not seek relief outside the presence of the jury, but instead went on to another line of questioning. In fact, Deborah Green was never called as a defense witness, despite the court's later suggestion, "if y'all wanted to call [Green] you had opportunity to do so."

Nor did the court err in sustaining the State's relevancy objection.

> The procedure for asserting an error regarding testimony sought to be introduced on direct examination is as follows: "(I)t must appear that a pertinent question was asked, that the court ruled out an answer, that a statement was made to the court at the time showing what the answer would be, and that such testimony was material and would have benefited the complaining party."

*Harris v. State*, 263 Ga. 526, 527 (2) (435 SE2d 669) (1993). Since Lyons had the opportunity to make such a proffer but failed to do so, this claim presents nothing for review. Id.

Even if we were to consider the pretrial in-chambers conference with Deborah Green as an offer of proof, the information provided therein was clearly insufficient under *Harris*.

8. Lyons asserts that the trial court erred in denying his objection to the improper use of impeachment evidence by the district attorney. Defense witness Frank Taylor testified that he saw a station wagon parked across the street from the victim's home sometime between 8:30 p.m. and midnight on the night of the murder. During cross-examination of another defense witness, Deputy Sheriff Brad Freeman, the district attorney established that Taylor had given a statement to the deputy that he observed the vehicle on the day following the murder. Based on the inconsistency and Taylor's availability for further examination, the court properly allowed the prior inconsistent statement for impeachment purposes. *Winn v. State*, 269 Ga. 145 (2) (498 SE2d 56) (1998).

9. During rebuttal, the State sought to introduce the testimony of Lyons' former cellmate, Roy Dykes, who was to testify to certain alleged jailhouse admissions made to him by Lyons. The defense objected on the basis that the proposed testimony would exceed the scope of rebuttal. The State responded that the witness was offered to rebut the testimony of a defense psychologist who opined that

Lyons' statement to the police was unreliable because his mental deficiency rendered him subject to intimidation and coercion. The court allowed the witness to testify with the admonition that the defense may "make whatever objections during his testimony" they deemed appropriate.

The defense made no objection to any question posed by the prosecutor or any response given by Dykes; thus, this enumeration provides nothing for review. See generally *Earnest v. State,* supra at (1).

10. The jury was fully instructed that they could return a verdict of guilty but mentally retarded under OCGA § 17-7-131, as an option to guilt or innocence. When the verdict was returned finding Lyons guilty of all charged offenses, it became apparent that the verdict form had erroneously provided the option of "guilty but mentally ill" instead of "guilty but mentally retarded." The court immediately explained the error to the jury, repeated the charge under OCGA § 17-7-131, and instructed the jury to reconsider their verdict in light of the corrected verdict form. After further deliberations, the verdict was reissued with the same results. A poll of the jury revealed that each member agreed with the verdict.

We find that the court's curative actions were sufficient to render the error harmless. Accordingly, a new trial is not demanded. *Warren v. State,* 232 Ga. App. 488 (7) (502 SE2d 336) (1998).

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 18, 1999 —
RECONSIDERATION DENIED NOVEMBER 15, 1999.

*Sullivan & Kight, L. Jimmy Kight, Jr.,* for appellant.
*Tommy K. Floyd, District Attorney, Mark S. Daniel, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, H. Maddox Kilgore, Assistant Attorney General,* for appellee.