## A02A1365. TORRES v. THE STATE.
### (574 SE2d 438)

PHIPPS, Judge.

Rene Torres was indicted for armed robbery. At trial, two police officers who viewed a store surveillance tape that captured the October 19, 1998 robbery named Torres as the gunman. Torres's statement to police, wherein he admitted to being the gunman during the robbery, was admitted into evidence. The jury found Torres guilty as charged. On appeal, he contends that the trial court erred in denying his motions for mistrial made on the grounds that the State's witnesses improperly placed his character into evidence. Finding no reversible error, we affirm.

After the State's opening statement, Torres's counsel called a sidebar conference, during which he sought to exclude character evidence against Torres through the testimony of law enforcement officers that they knew Torres from prior criminal activity. The prosecutor announced that he had already instructed those witnesses not to mention Torres's prior arrest, any possible gang affiliations, "potentially borderline character evidence [or] . . . that they've known him from a prior contact." Based on that, the court stated that the officers could testify that they knew Torres from prior contacts, but admonished that they should not try to imply that "it was from being arrested or something like that."

On appeal, Torres claims that thereafter three law enforcement officers improperly injected his character in evidence and that the trial court erred in denying his several motions for mistrial. The first instance occurred after a police officer testified that in the course of the robbery investigation, he had reviewed the store surveillance videotape and identified Torres. The videotape was played at trial, and the officer again identified a robber as Torres. Cross-examination of the officer by Torres's counsel began as follows:

Q: Officer, you would admit looking at those videos that there's really no actual clear photograph of his face?
A: It's not . . . real clear . . . , but I have no doubt [as] to who it is.

. . .

Q: Now you're positive it's [Torres]?
A: When they slowed it down — when you slow it down you can look. You can see. I carry a picture of him with me. I've got pictures of him and some of his buddies that were in fights and stuff a lot and —.

Torres's counsel objected. At a sidebar conference, he argued that his question had concerned only the clarity of the video. The court reminded the prosecutor, "you've instructed your witness and [Torres's counsel] is relying upon that instruction." Torres's counsel declined the court's offer of a curative instruction and then moved for a mistrial. The court denied that motion.

The second instance occurred during the direct examination of a second police officer who, during the course of the investigation, also had reviewed the videotape and identified one of the robbers as Torres. The prosecutor asked that officer during direct examination, "[H]ow have you had contacts — how many times would you say you've had contact with Mr. Torres over the time you've known him?" The officer replied, "I'd have to pull it up in our computer system since he was 16." Torres's counsel objected and requested a conference outside the jury's hearing, which concluded with the court's overruling his objection. After recross-examination, that witness was excused, at which point, Torres's counsel moved for a mistrial. That motion was denied.

The third instance happened during the cross-examination of a third police officer who was asked whether the first officer had told him during the investigation that he believed the individual on the video was Torres. The officer responded, "No. [The first officer] identified him as Pelon, which is a nickname for . . . Rene Torres, then provided me with a[n] arrest booking form, in fact, on Rene Torres." Torres's counsel requested a conference out of the hearing of the jury, during which he moved for a mistrial, urging that his question had "nothing to do with anything that [the police officer] interjected here. It's just they're adding to the case." That motion was denied.

After cross-examination of that officer, the State and the defense rested. Then, out of the presence of the jury, Torres's counsel agreed that a curative instruction should be given. The court instructed the jury to "disregard any reference to an arrest booking report and do not consider any such evidence during your deliberations or your consideration in this case."

After the jury retired for deliberation, Torres's counsel renewed his motion for a mistrial "based upon the previous arguments" and "the cumulative effect" of improper injections of character into the trial. The court denied that motion.

Generally, evidence of bad character is inadmissible unless the

defendant first puts his character in issue.[1] Torres and the court were entitled to rely on the prosecutor's assurances that the State's witnesses would not mention any prior crimes involving Torres or otherwise suggest that Torres's character was bad.[2] Yet there were repeated references to prior crimes and bad character by successive prosecution witnesses — all law enforcement professionals, who had been instructed by the prosecutor not to do so.

We review a trial court's denial of a motion for a mistrial based on the injection of improper character evidence for manifest abuse of the court's discretion.[3] While a curative instruction may serve as an adequate remedy in some cases,[4] we will reverse if a mistrial was essential to preserve the defendant's right to a fair trial.[5] However, pretermitting whether the denial of any of Torres's motions for mistrial constituted an abuse of discretion and whether any such denial was preserved for appellate review,[6] we find that the evidence against Torres was otherwise overwhelming. The State presented two witnesses, the police officers, who identified Torres as the gunman shown in the videotape of the armed robbery. It also introduced Torres's statement, wherein he admitted, "I entered the store, pulled the gun and made the clerk lay down on the floor. I took about $600." Torres's pretrial motion to suppress that statement was denied, and he does not challenge that denial on appeal. Even if the denial of mistrial was error, we are constrained to find, especially considering

---

[1] OCGA § 24-9-20 (b).

[2] See generally *King v. State*, 261 Ga. 534, 535-536 (2) (407 SE2d 733) (1991); *Chavous v. State*, 205 Ga. App. 455, 456-457 (2) (422 SE2d 327) (1992) (law officer cannot be allowed to avoid the clear intent of the court's instructions by relating excluded information to the jury in another fashion); see also *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991) (before any evidence of independent offenses or acts of accused may be admitted into evidence, a hearing must be held pursuant to Uniform Superior Court Rule 31.3 (B), at which, the State must affirmatively show, as to each independent offense or act it seeks to introduce, that (1) the State seeks to introduce evidence for some appropriate purpose, deemed to be exception to general rule of inadmissibility, (2) there is sufficient evidence to establish that accused committed independent offense or act, and (3) there is sufficient connection or similarity between independent offense or act and crime charged so that proof of former tends to prove latter).

[3] *King*, supra at 535.

[4] See *Sims v. State*, 268 Ga. 381, 382 (2) (489 SE2d 809) (1997).

[5] *King*, supra.

[6] See *Flynn v. State*, 255 Ga. 415, 419 (6) (a) (339 SE2d 259) (1986) (a motion for mistrial not made contemporaneously with the alleged misconduct makes the motion not timely); *Hodges v. State*, 249 Ga. App. 268, 271 (3) (547 SE2d 386) (2001) (where trial judge gives corrective instructions and counsel thereafter fails to request further instruction or renew his motion for mistrial, the issue is waived); *Baugher v. State*, 212 Ga. App. 7, 11 (3) (440 SE2d 768) (1994) (this state does not follow a "cumulative error" rule of prejudice; any error must stand or fall upon its own merits and is not aided or aggravated by the accumulative effect of other claims of error).

Torres's admission that he robbed the store, that it is highly probable that the complained-of evidence did not contribute to the verdict.[7]

· *Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 15, 2002.

*Michael A. Corbin*, for appellant.

*Kermit N. McManus, District Attorney, Mark P. Higgins, Jr., Assistant District Attorney*, for appellee.

---

[7] See *Carlton v. State*, 224 Ga. App. 315, 317 (2) (480 SE2d 336) (1997); *Underwood v. State*, 218 Ga. App. 530, 534 (3) (462 SE2d 434) (1995).