## A04A1248. SMITH v. THE STATE.
## A04A1249. BRYANT v. THE STATE.
### (602 SE2d 921)

JOHNSON, Presiding Judge.

Thurnell Smith and Eric Bryant were each charged with two counts of aggravated assault in connection with the attempted armed robbery of a grocery store. The men were tried together by a jury, and each defendant was found guilty of both charges. The trial court merged the counts and sentenced each defendant on one count of aggravated assault. Smith and Bryant filed separate appeals but, because the facts are the same, we have consolidated the appeals. In Case No. A04A1248, Smith challenges the state's introduction of what he claims was character evidence, and the admission of a statement he made to police during his detention. In Case No. A04A1249, Bryant challenges the sufficiency of the evidence to support his conviction. None of the enumerations has merit, so we affirm the convictions in both cases.

### Case No. A04A1249

1. Bryant contends that the evidence is not sufficient to support his convictions because it merely shows that he was present at the scene when the crime occurred, not that he was involved in planning or executing the crime. The evidence was sufficient.

When evaluating the sufficiency of evidence, the proper standard for review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.[1] This Court does not weigh evidence or resolve conflicts in testimony; instead, we review the evidence in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence.[2]

So viewed, the evidence shows that at 5:30 a.m. three men entered a Kroger grocery store in a single file line. They approached a cashier in the same manner. The cashier completed a transaction with a customer then, nervous about the men's behavior, quickly shut the cash register drawer. As she did so, one of the men said "Give it up. Give it up, bitch." He pulled a gun and pointed it at the cashier's head. The other two men stood immediately behind him. The cashier ran from the cash register, and the three men left the store without taking anything.

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Dean v. State*, 273 Ga. 806-807 (1) (546 SE2d 499) (2001).

[2] *Dean*, supra at 807 (1).

Ten minutes later, police officers on patrol received a call to respond to an attempted robbery at Kroger. The officers spotted three men who fit the descriptions given by the victim walking about four blocks from the store. The officers got out of their car and asked if they could speak to the men. The men began to talk to each other. One of the officers asked the men to "come here for a second." One of the men, identified at trial as Bryant, shoved another of the three toward the officer, and then fled with the third man. One of the officers detained the man who had been shoved; he was later identified as Brown. The other officer pursued the two fleeing men on foot. One of the two men, identified at trial as Smith, was holding his pocket as if "he was trying to prevent something from falling out." After a brief chase, the two men escaped.

At about 9:45 on the same morning, officers arrived at Smith's mother's home and found Smith and Bryant asleep in a bedroom. With the permission of Smith's mother, officers searched the bedroom where Smith and Bryant had been sleeping and found ammunition in a closet. Bryant initially told officers that he had not been to Kroger that morning. When officers told him there were pictures of him on the store videotape, he admitted having been there, but stated that he merely went into the store, turned around and walked out upon remembering that he had been banished from the store.

Bryant testified that he went to the store with Smith and saw Brown walk into the store ahead of them. Bryant did not see anyone with a gun and did not hear anyone tell the cashier to "Give it up." He also testified that he did not run from the police, but that he did run home from Kroger. He said he ran because Smith was running.

Smith testified that Bryant and Brown came to his house the evening before, that they did not discuss committing a robbery, and that the three happened to meet at Burger King just before walking to Kroger. Smith said Brown pulled the gun and threatened the cashier, and that when he saw the gun he turned and walked out of the store. He said he was not with Brown after the crime was committed.

At trial, the cashier identified Smith as the gunman, and Bryant and Brown as the men who entered the store with Smith and stood behind him during the commission of the crime.

It is true that mere presence at the scene of a crime is insufficient to convict one of being a party to the crime.[3] However, presence, companionship and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be

---

[3] *Lewis v. State*, 199 Ga. App. 97, 98 (1) (403 SE2d 814) (1991).

inferred.[4] Here, the state presented evidence demonstrating far more than Bryant's mere presence. There was evidence that the three men met the night before the aggravated assault occurred, that at 5:30 a.m. they entered the store together and in concert, that they approached the checkout counter together and stood near each other when Smith demanded money and pointed a gun at the cashier's head, that they all left immediately upon the cashier's flight, that they were seen walking together a few blocks away ten minutes later, that Smith was seen holding something in his shirt, that Bryant fled when approached by police, that he was found hours later with Smith, that ammunition was found at that residence, and that Bryant gave inconsistent accounts of his activities that morning. A rational trier of fact could find Bryant guilty of aggravated assault beyond a reasonable doubt.[5]

## Case No. A04A1248

2. In two enumerations of error, Smith contends he did not understand his rights because he was intoxicated at the time his rights were read to him and because he suffers from a mental disability. Therefore, he urges, the statement he made to police should not have been admitted at trial. We disagree.

*Miranda v. Arizona*[6] requires that, before police interrogate a suspect in custody, the suspect must be warned that: (1) he has the right to remain silent; (2) his statements may be used against him at trial; (3) he has the right to an attorney during questioning; and (4) if he cannot afford an attorney, one will be appointed for him.[7] In the absence of these warnings, *Miranda* requires that the suspect's statements be excluded from evidence at trial unless the state can demonstrate the existence of an exception to the exclusionary rule.[8]

At the outset, we note that Smith has not indicated in his brief how his statement, in which he denied any involvement in or knowledge of the crimes, was incriminatory. Even assuming the statement was somehow incriminating, his position is without merit.

(a) *Intoxication.* When Smith was arrested, he was read his *Miranda* rights. Smith apparently indicated at first that he did not understand. The officer then explained the rights "in simpler terms" that he believed anyone could understand. After Smith gave a series of responses which convinced the officer that he did understand,

---

[4] Id.

[5] See OCGA § 16-5-21; *Martin v. State*, 271 Ga. 301, 304 (1) (518 SE2d 898) (1999).

[6] 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[7] *Kennedy v. State*, 246 Ga. App. 236, 237 (2) (540 SE2d 229) (2000).

[8] Id.

Smith signed a form in which he acknowledged that he fully understood his rights and then waived those rights. The officer testified that he observed Smith during the interview, that Smith did not appear to be under the influence of any intoxicants, that Smith seemed to understand his questions, and that Smith's answers were responsive to his questions.

Despite Smith's claim that he was unable to understand his rights due to his intoxication, the trial court resolved the conflict in the evidence in favor of the state's witnesses and found from a preponderance of the evidence that Smith was advised of his *Miranda* rights, and that he knowingly and intelligently waived them. The trial court is entitled to credit the officer's assessment of Smith's sobriety.[9] Since the evidence supports the findings of the trial judge in the instant case, Smith's statement was properly admitted.[10]

(b) *Mental Impairment.* Smith also claims his mental impairment prevented him from understanding his rights. He says that he told the officer during the interrogation that he did not understand his rights and that he "got a check." Smith contends that the evidence shows that he received payments for a mental disability, and that he had only an eighth grade education. Therefore, he urges, his rights were not knowingly and intelligently waived and his statement was inadmissible.

During the *Jackson v. Denno* hearing, Smith testified that he received "a check" because he was "slow," and that he did not understand the rights explained to him. However, the officer testified that he read Smith his rights, explained each of the rights to him, and then asked Smith if he understood. Smith replied that he did and then signed the waiver form. The officer testified that Smith answered the questions appropriately.

Whether a defendant lacks capacity to understand and waive his *Miranda* rights due to mental deficiency or illiteracy is a question of fact to be determined by the trial court; and once the determination is made, it will be affirmed unless it is clearly erroneous.[11] The fact that Smith may have been suffering from some unspecified mental condition or from a lack of formal education beyond the eighth grade was not sufficient to exclude the statement.[12] In fact, a trial court may be authorized to find that an individual is capable of waiving his rights even though there is evidence to the effect that he is mildly or

---

[9] *Robinson v. State*, 272 Ga. 752, 756 (4) (533 SE2d 718) (2000).

[10] See *Price v. State*, 201 Ga. App. 435, 436 (1) (411 SE2d 343) (1991).

[11] *Lyons v. State*, 271 Ga. 639, 641 (3) (522 SE2d 225) (1999).

[12] See id.

moderately retarded.[13] Once the trial court determines whether a defendant is mentally impaired and the extent of that impairment, this Court will approve that determination unless it is clearly erroneous.[14] The court's determination in this case, that Smith understood his rights and that the waiver was voluntary, was not clearly erroneous.[15] Reversal is not required.

3. Smith claims that his character was improperly injected into the trial. Specifically, he complains that when the police officer described the events surrounding his encounter with the suspects on the morning the crime was committed, he said he knew Smith by his nickname because he previously "got out with [Smith] one morning — early one morning. He told me his name was Buddy." According to Smith, this testimony was prejudicial both because it implied that he had been involved in a prior criminal investigation and because the earlier encounter occurred, like the instant crime, early in the morning. This enumeration presents no basis for reversal.

Generally, evidence of bad character is inadmissible unless the defendant first puts his character in issue.[16] However, testimony that police already knew a defendant's name or nickname does not put his character at issue.[17] Likewise, the officer's vague testimony that he "got out with [Smith]," and that the encounter occurred early in the morning, does nothing to impugn his character. We review a trial court's denial of a motion for a mistrial based on the injection of improper character evidence for manifest abuse of discretion.[18] Considering the nature of the testimony at issue, we cannot say that the trial court abused its discretion in denying Smith's motion for a mistrial.

*Judgment affirmed. Smith, C. J., and Phipps, J., concur.*

DECIDED AUGUST 6, 2004.

*Martin H. Eaves*, for appellant (case no. A04A1248).

*McGee & McGee, James B. McGee III*, for appellant (case no. A04A1249).

---

[13] Id.; *Moody v. State*, 205 Ga. App. 376, 377 (1) (422 SE2d 70) (1992).

[14] *Moody*, supra.

[15] See id.

[16] *Torres v. State*, 258 Ga. App. 393, 394-395 (574 SE2d 438) (2002).

[17] See generally *Kirkland v. State*, 173 Ga. App. 687, 688 (5) (327 SE2d 808) (1985).

[18] See *Torres*, supra.

*Richard E. Currie, District Attorney, Amy A. Ferguson, Assistant District Attorney*, for appellee.