## A08A1875. BILLINGSLEY v. THE STATE.
(669 SE2d 699)

MILLER, Judge.

Following a jury trial, Kevin Deondre Billingsley was convicted of three counts of armed robbery, OCGA § 16-8-41. Billingsley appeals, contending that the trial court erred in denying his motions to suppress (i) identification evidence, (ii) evidence seized following a traffic stop, and (iii) his custodial statement to police. Billingsley also maintains that the trial court erred in denying his motion for a

continuance to retain a new attorney, in admitting evidence not supported by a proper foundation, in allowing the testimony of a police officer not based on firsthand knowledge, and in allowing his co-defendant to be brought into the courtroom in jail attire. By his final claim of error, Billingsley challenges the sufficiency of the evidence. Discerning no error, we affirm.

Viewed in the light most favorable to the jury's verdict (*Jackson v. State*, 252 Ga. App. 268 (1) (555 SE2d 908) (2001)), the evidence shows that at about midnight on April 26, 2005, three friends, Marvin Ellis, Rashad Hood, and Brian Parks, were held up at gunpoint by three men in the parking lot of a Norcross apartment complex as they returned home from a local gymnasium. The victims' assailants took Ellis' and Parks' gym bags, as well as Hood's wallet and keys. Malik Peterkin, a resident of the apartments, observed what took place and called police to report that a fourth individual had driven the assailants away in a bluish-gray Oldsmobile Alero, the rear tag of which was mounted under a frame embossed with the dealer's logo, "J. D. Byrider." Advised by radio to be on the lookout for this and aware that a Nancy Acevedo had been robbed at gunpoint that evening, Officer M. K. Donnelly of the Gwinnett County Police Department later stopped a car matching the description of the Alero. Billingsley, who had been driving, and his passenger, co-defendant Christopher Hogan,[1] were ordered out of the car and taken into custody as suspected felons. In the search to clear the vehicle of other possible occupants, Officer K. B. Everson found several duffel bags in the back seat as well as a 9mm handgun. At a post-arrest showup and in court, Peterkin and Ellis identified Billingsley as one of the perpetrators who robbed them at gunpoint. In testifying on his own behalf, Billingsley denied any participation in the incident notwithstanding that which had been found in his car. Billingsley explained, however, that he and Hogan had been present in the parking lot to pick up a friend; that his friend had declined the ride but sought to convince him to take the bags he had with him; and that Hogan placed the bags in his vehicle.

1. Billingsley contends his conviction must be reversed because the trial court permitted evidence of impermissibly suggestive showup procedures and tainted in-court identifications. Specifically, he challenges the identification testimony against him of eyewitness Peterkin and that of victims Ellis and Hood,[2] arguing that they had not provided a prior description of him. Billingsley also argues that

---

[1] Hogan entered pleas of guilty separately to the armed robberies but refused to testify at trial, through counsel indicating that he would move to withdraw the guilty pleas.

[2] Victim Parks identified co-defendant Hogan, not Billingsley, at the showup. Neither did he identify Billingsley at trial.

before being asked to identify him, the police told the victims that the bags stolen in the robberies were in a car next to the police vehicle in which he was then seated; told the victims to identify him because of an incident which had occurred before the robberies; and permitted Peterkin to discuss the robberies with the victims. We find no error.

Billingsley's claims to the contrary notwithstanding, the evidence shows that the police were unaware that the victim's belongings were present at the scene of the showup. There also is no evidence showing that the police "instructed" the victims to identify Billingsley at the showup. Rather, the evidence shows that the police advised the victims that they would be asked if they could identify two individuals arrested in connection with another incident. Although Peterkin admittedly discussed the incident with the victims, that fact does not require suppression of the victims' identification of Billingsley. "Even [were] an identification procedure . . . impermissibly suggestive, the evidence should be suppressed only if a substantial likelihood of irreparable misidentification exists," (footnote omitted) *Treadwell v. State*, 272 Ga. App. 508, 511 (3) (613 SE2d 3) (2005), and we find none.

> Factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

(Footnote omitted.) *Lenon v. State*, 290 Ga. App. 626, 630 (3) (660 SE2d 16) (2008). Here, Peterkin, Ellis, and Hood each had ample opportunity during the robberies to observe the robbers. There was evidence showing that the parking lot was well-lit; that the showup procedure occurred shortly after the robberies; that the police had not sought to influence Peterkin or the victims; and that the witnesses had identified Billingsley with certainty. Under these circumstances, the identifications were reliable, and the trial court's admission of the identification evidence was not clearly erroneous. Id.

2. Billingsley contends that the trial court erred in denying his motion to suppress the handgun and gym bags seized in the search of his vehicle, arguing that the traffic stop was based on no more than a hunch and that there was no basis for the protective sweep of his vehicle that followed. We disagree.

> The standard for an investigatory stop is well established. An officer may stop a vehicle for investigation if it is justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. This suspicion need not meet the standard of probable cause, but must be more than mere caprice or a hunch or an inclination. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing.

(Citation omitted.) *State v. Melanson*, 291 Ga. App. 853, 854 (663 SE2d 280) (2008). A protective sweep of a vehicle's passenger compartment is merely an extension of the investigatory stop, the scope of which "is determined in each case by balancing the extent of the intrusion against the immediacy and importance of the interest in crime prevention or law enforcement which is sought to be advanced." (Citation and punctuation omitted.) *State v. Brown*, 178 Ga. App. 307, 308 (1) (342 SE2d 779) (1986). The search, like the investigative stop, must be "reasonably related in scope to the circumstances which justified the interference in the first place." (Citations and punctuation omitted.) *Tarwid v. State*, 184 Ga. App. 853, 855 (1) (363 SE2d 63) (1987).

Here, the evidence shows that Officer Donnelly received a radio dispatch directing him to proceed to the scene of the armed robberies. En route to that location, he observed a vehicle matching the description given of the perpetrators' vehicle. These facts gave Officer Donnelly grounds for conducting the traffic stop at issue for investigatory purposes, and demonstrate that such stop was not premised on mere hunch and that it was neither arbitrary nor harassing in nature. *Melanson*, supra, 291 Ga. App. at 854.

Further, we find that the protective sweep of the vehicle which followed was justified. *Tarwid*, supra, 184 Ga. App. at 855 (1); *Brown*, supra, 178 Ga. App. at 308 (1). Dispatch had warned Officer Donnelly that he was looking for a vehicle in which there were three potentially armed men. Only Billingsley and Hogan had exited the vehicle on Officer Donnelly's order after the stop; Billingsley, however, was slow to comply with Donnelly's order to exit the vehicle and to face away; and the back seat of the vehicle was cluttered with what Officer Donnelly described as duffle bags and other things which may have concealed a weapon or a third individual.

Thus, we find that the trial court did not err in denying Billingsley's motion to suppress. It follows that no basis for excluding the evidence seized in the search of the vehicle Billingsley drove arises as the fruit of the poisonous tree. See *Wong Sun v. United States*, 371 U. S. 471, 487-488 (III) (83 SC 407, 9 LE2d 441) (1963)

(barring the admission of evidence obtained by the exploitation of an illegal search).

3. Billingsley contends that the trial court erred in admitting his custodial statement into evidence, arguing that he had not validly waived his *Miranda*[3] rights. Specifically, Billingsley claims that he did not understand his rights because he was illiterate and the police woke him at 3:00 a.m. to question him. We disagree.

"Whether a defendant lacks capacity to understand and waive his *Miranda* rights due to mental deficiency or illiteracy is a question of fact to be determined by the trial court; and once the determination is made, it will be affirmed unless it is clearly erroneous." (Footnote omitted.) *Smith v. State*, 269 Ga. App. 17, 20 (2) (b) (602 SE2d 921) (2004). Billingsley's claims to the contrary notwithstanding, the record reflects that the interviewing officer read Billingsley his rights; that he appeared to understand his rights; that he complained of no physical injury or ailment; that the police removed his handcuffs, permitting him to use the restroom, and offered him water; that he did not appear groggy or non-responsive after napping; that his statement was not prompted by any hope of benefit; and that he signed the rights waiver form after indicating that he understood his rights.

Given the foregoing, we find that the trial court's determination in this case, that Billingsley knowingly, voluntarily, and intelligently waived his *Miranda* rights, was not clearly erroneous. *Smith*, supra, 269 Ga. App. at 20 (2) (b).

4. Billingsley complains that the trial court erred in denying his motion for a continuance to retain new counsel. We disagree.

"Denial of continuance may be proper where defendant negligently failed to employ counsel promptly or where it appears he is using the tactic for delay." (Citations and punctuation omitted.) *Williams v. State*, 225 Ga. App. 319, 321 (2) (483 SE2d 874) (1997). The record reflects that Billingsley, through appointed counsel, filed a demand for a speedy trial one week before his trial began. At trial, he offered only the desire to get a second opinion from a private attorney in support of his motion. In refusing to continue the trial, the trial court found that Billingsley's appointed counsel was "ready to try [his] case." We find no indication to the contrary of record. Under these circumstances, the trial court did not abuse its discretion in denying Billingsley's motion for a continuance. See *Cunningham v. State*, 244 Ga. App. 231, 232 (1) (535 SE2d 262) (2000) ("Whether to grant a motion to continue is entirely within the sound legal discretion of the trial court.") (footnote omitted).

---

[3] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

5. Billingsley also contends that the trial court erred in admitting into evidence the items stolen at the scene because the State failed to lay a proper foundation. Given Billingsley's failure to support this claim of error by reference to the record, he has abandoned the same on appeal. See Court of Appeals Rule 25 (c) (2) (i) ("In the absence of such reference, [this] Court will not search for or consider such enumeration.").

6. Further, Billingsley contends that the trial court erred in admitting hearsay when Officer Donnelly testified that Officer Everson gave him a handgun, stating that "[Everson] found it underneath the stuff in the car." But since Officer Everson later testified from first-hand knowledge that he had done so, any error was harmless. *Assad v. State*, 195 Ga. App. 692, 693 (2) (394 SE2d 617) (1990) (admission of hearsay which is cumulative of direct testimony of a witness amounts to harmless error).

7. Inasmuch as Billingsley was found not guilty of armed robbery as to Acevedo, he suffered no prejudice when his co-defendant, Hogan, was brought into the courtroom in jail attire for the purpose of allowing Acevedo to identify Hogan as the perpetrator of the armed robbery against her. Even were the foregoing deemed error, "it is irrefutable that error without resulting prejudice is harmless. . . ." (Citations and punctuation omitted.) *Cox v. State*, 279 Ga. 223, 229 (9) (610 SE2d 521) (2005).

8. Finally, having reviewed the evidence in the light most favorable to the jury's verdict, we find that a rational trier of fact could have found Billingsley guilty, beyond a reasonable doubt, of the armed robberies at issue. OCGA § 16-8-41 (a); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Foster v. State*, 267 Ga. App. 363, 364 (1) (599 SE2d 309) (2004).

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 18, 2008.

*Brandon Lewis*, for appellant.
*Daniel J. Porter*, District Attorney, *David K. Keeton*, Assistant District Attorney, for appellee.