S11A0292. BARRETT v. THE STATE.
(709 SE2d 816)

HINES, Justice.

On January 29, 2010, a Lowndes County grand jury returned an indictment charging Jonathan Keith Barrett with malice murder and concealing the death of another in connection with the July 21, 2009, killing of Brittany Wade, Barrett's girlfriend and the mother of his children. This Court granted Barrett an interlocutory appeal from an order of the Superior Court of Lowndes County, which denied his motion to suppress certain statements he made to law enforcement officers in order to consider whether the superior court

erred in concluding that Barrett's waiver of his *Miranda*[1] rights was knowing and voluntary in light of the evidence of his mental disabilities. For the reasons that follow, we affirm the superior court's denial of suppression.

On July 22, 2009, the body of 17-year-old Brittany Wade was found partially buried in the back yard of the home of Marion Wells, who was Barrett's aunt, and with whom the 21-year-old Barrett lived. At the time of Wade's death, Wade and Barrett were involved in a romantic relationship and were the parents of two young sons.

Shortly after the discovery of Wade's body, a detective with the Valdosta City Police Department located Barrett at a development center; when the detective found Barrett, Barrett was filling out a job application. The detective asked Barrett if he would mind stepping outside and sitting in the front seat of the patrol car to talk, and Barrett agreed. Barrett was not placed under arrest. The detective told Barrett that Wade had been found dead in the back yard of Barrett's home, at which time Barrett "put his head down" and spontaneously stated, "It was an accident, it was an accident." The detective read Barrett his *Miranda* rights, and Barrett acknowledged that he understood the rights read to him and that he wished to then talk to the detective. Barrett did not ask for an attorney, nor at any time did he indicate that he no longer wished to speak with the detective. Barrett agreed to go to the police station for further questioning. In an interview room at the police station, Barrett was again given his *Miranda* rights, and he executed a written waiver of those rights; Barrett wrote his initials on the indicated lines beside each right and his signature on the bottom of the document. During the resulting interview, which lasted approximately an hour, Barrett made further inculpatory statements.

After Barrett was taken to the police station, Wells contacted an attorney who had represented Barrett on a previous matter and asked the attorney to assist Barrett in the interrogation. The attorney went to the police station and asked to go into the interrogation room with Barrett. Barrett was unaware that Wells had hired an attorney. After consulting with an assistant district attorney, the police denied the attorney's request to be present at the interview because Barrett was 21 years old and had not requested an attorney.

A forensic psychologist evaluated Barrett and found him competent to stand trial. Following a hearing and review of Barrett's psychological evaluation, the superior court denied Barrett's motion to suppress.

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

1. Barrett contends that his statements should have been suppressed because his mental disabilities prevented him from voluntarily, knowingly, and intelligently waiving his *Miranda* rights.

Certainly, incriminating statements are admissible against the accused at trial only if they are voluntary, and the State has the burden of proving voluntariness by a preponderance of the evidence. *Canty v. State*, 286 Ga. 608, 610 (690 SE2d 609) (2010). Inasmuch as the gravamen of Barrett's challenge to voluntariness is his claim of his inability to understand, and therefore to waive, his rights under *Miranda,* the examination must focus on evidence of Barrett's mental capacity. As the superior court noted in its detailed order, a defendant's alleged cognitive impairment is not dispositive on the question of voluntariness but is one factor for the trial court to consider in the context of the totality of the circumstances surrounding a statement and a waiver of *Miranda* rights. *King v. State*, 273 Ga. 258, 260 (3) (539 SE2d 783) (2000). The mere showing that a defendant who has confessed to a crime may have some mental disability is an insufficient basis upon which to exclude the defendant's statement. *Griffin v. State*, 285 Ga. 827, 828 (2) (684 SE2d 621) (2009). Indeed, the fact that a defendant is of below average intelligence or even has moderate mental retardation does not, in and of itself, warrant the exclusion of the defendant's inculpatory statement; there must be additional and sufficient evidence that the defendant did not have the capacity to understand and knowingly waive his *Miranda* rights. *Height v. State*, 281 Ga. 727, 728 (2) (642 SE2d 812) (2007). And, whether a defendant lacks the capacity to understand and waive such rights due to a mental deficiency or illiteracy is a question of fact for the trial court to determine. *Billingsley v. State*, 294 Ga. App. 661, 665 (3) (669 SE2d 699) (2008).

The superior court found that Barrett's initial patrol car statement that the victim's death was an accident was made while Barrett was not in custody, and that Barrett's statement was not given in response to any questioning by the detective. A statement which is spontaneous and unsolicited as not made in response to any form of custodial interrogation is not bound by the strictures of *Miranda* and is admissible without the warnings having been given. *Phillips v. State*, 285 Ga. 213, 215 (2) (675 SE2d 1) (2009). The issue of whether a statement was the result of an interrogation or was instead volunteered is a determination of fact for the trial court, and it will not be disturbed unless it is clearly erroneous. *Velazquez v. State*, 282 Ga. 871, 877 (8) (655 SE2d 806) (2008). The superior court's finding that Barrett's initial statement was non-custodial and unsolicited is supported by the record; therefore, Barrett's capacity to understand the substance of his rights under *Miranda* in regard to this first statement is irrelevant.

As to Barrett's second statement, the superior court expressly found "from a preponderance of the evidence and under the totality of the circumstances" that Barrett was twice advised of his *Miranda* rights; that he twice indicated he understood those rights and voluntarily waived them; and that thereafter he gave his statement freely and voluntarily without any hope of benefit or fear of injury. The court expressly stated that it had reviewed the "Forensic Services Psychological Evaluation" and noted that the evaluating psychologist found that Barrett was competent to stand trial; that his cognitive abilities fell within the "upper range of [m]ild [m]ental [r]etardation," and that Barrett's score on an administered test indicated that he might be "malingering psychiatric illness." The court determined that the State had demonstrated that Barrett had the capacity to understand and waive his *Miranda* rights at the time of his questioning.

In this Court's review of a trial court's grant or denial of a motion to suppress, the trial court's findings on disputed facts will be upheld unless clearly erroneous, and its application of the law to undisputed facts is subject to de novo review. *State v. Nash*, 279 Ga. 646, 648 (2) (619 SE2d 684) (2005). The superior court's finding that Barrett was capable of understanding his *Miranda* rights cannot be found to be clearly erroneous.

As noted, when the detective encountered Barrett at the development center, Barrett was completing a written job application, which demonstrated that Barrett was able to read, and that he knew and could relate personal information, including his name, address, telephone and social security numbers;[2] the evidence at the hearing on the motion to suppress also revealed that Barrett had graduated from high school.[3] The court-ordered psychological evaluation stated, inter alia, that Barrett appeared to understand his rights pertaining to the evaluation and that he signed the advisement of rights form; he appeared to be a "generally reliable historian," in that he could relate his personal history; that in 2001, Barrett had been evaluated to determine whether he continued to meet the requirements for special education services and it was determined that he should be classified as having "Mild Intellectual Disability"; Barrett's grooming and hygiene were good and he exhibited acceptable attention and concentration for the purpose of conversation; his overall thought

---

[2] In urging that the superior court's finding of mental capacity was plainly in error, Barrett attempts to make much of the fact that he answered some of the questions on the job application in a manner which would appear counterproductive to obtaining the ostensibly sought employment; however, the reason or motivation for such responses is merely speculative.

[3] Barrett's aunt described his diploma as a "Special Ed diploma."

processes were "linear and goal-directed"; it appeared that Barrett's cognitive abilities fell within the upper range of mild mental retardation; and that he was competent to stand trial. In addition, the detective who conducted the custodial interview with Barrett, and therefore, had a prolonged opportunity to personally observe and interact with Barrett, did not during the interview realize that Barrett had any "mental deficiency."[4]

Plainly, there is evidence to support the superior court's determination, and clear error cannot be found. *State v. Nash* at 648 (2).

2. Barrett also contends that his statement during the police station interview should be suppressed because he was denied the right to counsel in that due to his mental impairment, he needed someone to help him assert his right to counsel. But, this argument is likewise unavailing.

As discussed in Division 1, there was evidence to support the determination that, despite some mild mental impairment, Barrett was capable of understanding his *Miranda* rights, including his right to counsel, and that he never invoked this right. Thus, in regard to Barrett as to any other competent adult, the right to counsel, which is personal, must be invoked or waived by the defendant himself. *Bell v. State*, 280 Ga. 562, 565 (3) (629 SE2d 213) (2006). It cannot be delegated to another, even a close relative, nor is the attorney, acting on his or her own and without having consulted the defendant, empowered to invoke the defendant's personal right to counsel. Id. See also *Potter v. State*, 283 Ga. 576, 577 (2) (662 SE2d 128) (2008).

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 16, 2011.

*John K. Edwards, Sr., Valerie T. Bryant*, for appellant.

*J. David Miller, District Attorney, Tracy K. Chapman, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.

---

[4] At the hearing on the motion to suppress, the detective testified that he did not know of the claimed deficiency prior to the hearing.