**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**July 1, 2025**

# In the Court of Appeals of Georgia

A25A0733. THE STATE v. FERGUSON.

GOBEIL, Judge.

Eric Andrew Ferguson was indicted in Gwinnett County for various drug trafficking offenses. The State appeals from the trial court's order granting Ferguson's motion to suppress evidence recovered as the result of a traffic stop and search of Ferguson's vehicle. For the reasons set forth below, we vacate the trial court's order, and remand the case for additional findings of fact.

When the facts material to a motion to suppress are disputed, it generally is for the trial judge to resolve those disputes and determine the material facts. This principle is a settled one, and this Court has identified three corollaries of the principle, which limit the scope of review in appeals from a grant or denial of a motion to suppress in which the trial court has made express findings of disputed facts. First, an appellate court generally must accept those findings unless they are

clearly erroneous. Second, an appellate court must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court. And third, an appellate court generally must limit its consideration of the disputed facts to those expressly found by the trial court.

*Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015) (citations, punctuation and footnotes omitted). Nevertheless, the trial court's "application of law to undisputed facts is subject to de novo review." *Barrett v. State*, 289 Ga. 197, 200 (1) (709 SE2d 816) (2011).

In this case, the record shows that Ferguson was arrested and charged with trafficking methamphetamine, trafficking in illegal drugs, possession of marijuana with intent to distribute, and possession of a Schedule IV controlled substance with intent to distribute as a result of evidence seized during a traffic stop of a vehicle in which Ferguson was discovered. Ferguson filed a motion to suppress the evidence, arguing that the officers who searched his vehicle did not have a sufficient basis for their warrantless search. Ferguson also filed a motion to suppress certain statements he made to law enforcement both before and after he was given warnings pursuant to *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

The trial court held a hearing on the motions. The State agreed that certain pre-*Miranda* statements made by Ferguson to the officer that stopped him (responses to questions designed to elicit incriminating responses) would not be admissible at trial because the suspect was in custody and was questioned without being given proper warnings. And the parties agreed that the statements Ferguson made to law enforcement after being given his *Miranda* warnings were admissible. So the hearing went proceeded only on the motion to suppress evidence.

Corporal Thomas Dangle of the Gwinnett County Police Department testified that he was on patrol surveilling a gas station in the early morning hours of December 14, 2022. Dangle considered this gas station to be a high-crime area based on personal experience. He observed a woman loitering in the parking lot. A Dodge Charger, being driven by Ferguson, pulled into a parking space. The woman approached the car and walked by the driver's side. The woman waited around the gas station for a while before eventually leaving and walking down the street out of view.

Dangle ran the license plate on the Charger and discovered that the person driving the vehicle did not match the description of the person to whom the car was registered. Dangle continued to watch the Charger for roughly 40 minutes, observing

Ferguson exit the vehicle, place a backpack into the trunk, and then enter the gas station. Another individual arrived at the gas station, met up with Ferguson, and got into the driver's seat of the Charger. Ferguson exited the gas station and got into the passenger's seat. Dangle testified that this behavior could indicate that a person was attempting to avoid interacting with law enforcement.

By that time, Dangle had coordinated with other officers to follow the Charger, and another officer initiated a traffic stop of the vehicle shortly after it left the gas station, based on an alleged turn signal violation. Dangle also had observed what he believed to be an illegal window tint on the vehicle and wanted to investigate that further. The traffic stop was initiated at 2:26 a.m., and the driver pulled over at a second gas station.

As Corporal Dangle approached the vehicle, he noticed Ferguson bend down towards the floorboard. Then, after Ferguson rolled down his passenger window, Dangle spotted a cellophane wrapper coated in a crystalline material laying on the floor of the vehicle. Believing this to be narcotics, Dangle placed Ferguson under arrest. Ferguson insisted that it was a pastry wrapper, and upon further inspection,

Dangle realized it was not narcotics and released Ferguson from custody, telling him that he was not under arrest.

Corporal Dangle proceeded with the traffic stop. Dangle testified that while checking the window tint on the vehicle, he "could see in plain view in the driver door a small blue ziploc style jewelry bag or dime bag" in the handle of the door. Given his training and experience, he believed "that it was an empty bag used to package narcotics or previously held narcotics." He said that he "wasn't sure at the time," but it "heightened [his] suspicion that there could potentially be more narcotics . . . in the vehicle." Dangle asked Ferguson if he was subject to a Fourth Amendment waiver to which Ferguson replied that he was on probation out of Florida, but he was unsure about the Fourth Amendment waiver. Dangle could not confirm the waiver, and he testified that he called for the drug dog at 2:37 a.m. When asked about the length of time he kept Ferguson for the traffic stop, Dangle expressed that the stop evolved into a drug investigation after he observed the empty dime bag inside the vehicle.

Dangle's body cam footage was admitted into evidence at the hearing. Although the trial court viewed only portions of the video during the hearing, the court did not

make its ruling at the hearing. Instead the court stated that it was going to read the cases cited by the parties, and "[t]ake another look at the bodycam."

The trial court granted Ferguson's motion. As relevant here, the court determined that the 37 minutes that elapsed from the time officers initiated a traffic stop to the time the K-9 unit arrived exceeded that which would be required for the officers to issue warnings or write a citation for the window tint violation. The court found that the "discovery of a single empty plastic bag did not provide reasonable articulable suspicion to prolong the detention." This appeal followed.

On appeal, in addition to asserting that the trial court reached the wrong result on the merits of the motion to suppress, the State argues that the trial court failed to consider all of the available evidence in its ruling, and asks this Court to remand for additional findings.

"A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 575 U. S. 348, 354 (II) (135 SCt 1609, 191 LE2d 492) (2015). However, "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Terry*, 358 Ga. App. at 200 (1) (citation and punctuation omitted).

"[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission — to address the traffic violation that warranted the stop, and attend to related safety concerns." Id. (citation and punctuation omitted). "Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate that purpose. Authority for the seizure thus ends when tasks tied to the traffic infraction are — or reasonably should have been — completed." *Rodriguez*, 575 U. S. at 354 (II) (citations and punctuation omitted). "Our law is clear that it is permissible to conduct an open air search around a vehicle while a traffic stop is still in progress so long as the stop has not been unreasonably prolonged for the purpose of conducting the search." *Rush v. State*, 368 Ga. App. 827, 832 (2) (890 SE2d 883) (2023) (citation and punctuation omitted). However if "the officers prolonged the traffic stop in order to conduct [a] K-9 open-air sniff . . . the seizure at issue [is] unlawful." *State v. Fish*, 365 Ga. App. 605, 609 (1) (879 SE2d 694) (2022).

That said, a lawful traffic stop can morph into a criminal investigation and justify prolongation "so long as the officer can articulate reasonable suspicion that criminal activity is occurring." *Taylor v. State*, 342 Ga. App. 814, 816 (805 SE2d 131) (2017) (physical precedent only). To satisfy the articulable reasonable suspicion

7

standard, "the officer's investigation must be justified by specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct." Id. (citation and punctuation omitted). This requires a "particularized and objective basis" for suspecting that the particular person stopped is involved in criminal activity. Id. (citation and punctuation omitted) "Although this suspicion need not meet the higher standard of probable cause, it must be more than a mere caprice or a hunch." Id. (citation and punctuation omitted). To determine whether reasonable articulable suspicion existed, courts must look to the totality of the circumstances. Id. "Ultimately, the State bears the burden of proving that the search of the car was lawful, and to carry this burden, the State must show that it was lawful to detain the defendant until the time the drug dog indicated the presence of drugs." Id. at 816-817 (citation and punctuation omitted).

Given the manner in which the trial court expressed its holdings, we are unable to meaningfully consider whether the Appellant's arguments have merit. See *Williams v. State*, 301 Ga. 60, 62 (799 SE2d 779) (2017). Ordinarily, we generally presume the regularity of the proceedings and generally do not expect trial courts to specifically set forth each individual fact relied upon. See *O'Shields v. State*, 351 Ga. App. 800, 804

8

(1) (833 SE2d 290) (2019) (construing the evidence in the light most favorable to the trial court's judgment where the trial court has made no express findings of fact in a motion to suppress order). However, in this case, in its order, the court sets out a number of findings of fact. But in the section analyzing whether there was reasonable articulable suspicion to justify continued detention., the court simply states: "The Court finds that the discovery of a single empty plastic bag did not provide reasonable articulable suspicion to prolong the detention." It then "reject[s] the suggestion that the subsequent discovery of contraband should be considered as a factor supporting the propriety of a search." There are many additional facts in the record,[1] and it is not clear whether the court overlooked these facts, discounted them for some reason, or whether the court in fact considered all of these facts and found them not to reach the reasonable articulable suspicion standard. Given that the test for reasonable articulable

---

[1] For example, Dangle also testified about Ferguson's presence in what Dangle described as a high-crime area, the woman loitering around the parking lot and Ferguson's vehicle, and Ferguson's usual behavior in remaining in his parking spot for an extended time and then moving to the passenger seat when another driver arrived. Other information can be seen in the body cam footage, which the trial court did not describe in its order, such as Dangle's questioning of Ferguson possessing a torch lighter and two cell phones, Ferguson's statement that he was previously a drug user, Ferguson bearing an appearance that Dangle believed was consistent with a drug user, and inconsistent statements made Dangle. The parties disagree about whether some of these facts would be properly considered at this stage of the proceeding.

suspicion is a "totality of the circumstances" test, we cannot determine whether the ruling of the trial court was in error without a more robust explanation regarding the basis of the trial court's order. See *Williams*, 301 Ga. at 62 ("If the trial court has made express findings of fact, but not with sufficient detail to permit meaningful appellate review, an appellate court may remand for further findings.") (citation and punctuation omitted). See also *Hughes*, 296 Ga. 744, at 746 (we "generally must limit [our] consideration of the disputed facts to those expressly found by the trial court").

Our decision should not be construed as altering existing requirements for trial courts to substantiate their holdings. However when, as here, there is nothing in the analysis stating that the court considered the totality of the record and there is only one "single" fact specifically highlighted as the basis for its holding, we are unable to discern whether — or assume that — the court's holding indeed did consider the totality of the evidence.

Accordingly, we vacate the order of the trial court and remand for the court to make additional findings so that this Court can meaningfully review its judgment.

We do not authorize the reporting of this opinion because it does not announce a new rule or policy, or involve an interpretation of law that is not already precedent. See Court of Appeals Rules 33.2 (b), 34.

*Judgment vacated and case remanded. Rickman, P. J., and Davis, J., concur.*